53 new

1   **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2   Name Briggs          Averill          W
         (Last)           (First)         (Initial)

3   Prisoner Number V 31296

4   Institutional Address P.o.Box 1050, Soledad, CA. 93960

FILED

AUG 12 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

6   =========================================

7   **UNITED STATES DISTRICT COURT**
    **NORTHERN DISTRICT OF CALIFORNIA**

RMW

8   Averill Briggs
    (Enter the full name of plaintiff in this action.)

CV 08   3856

9                    vs.

10  Warden, Evans

Case No. _____
(To be provided by the clerk of court)

11

**PETITION FOR A WRIT (PR)
OF HABEAS CORPUS**

12

13

**E-filing**

14  (Enter the full name of respondent(s) or jailer in this action)

15

16  =========================================
    <u>Read Comments Carefully Before Filling In</u>

17  <u>When and Where to File</u>

18         You should file in the Northern District if you were convicted and sentenced in one of these

19  counties:  Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20  San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma.  You should also file in

21  this district if you are challenging the manner in which your sentence is being executed, such as loss of

22  good time credits, and you are confined in one of these counties.  Habeas L.R. 2254-3(a).

23         If you are challenging your conviction or sentence and you were <u>not</u> convicted and sentenced in

24  one of the above-named fifteen counties, your petition will likely be transferred to the United States

25  District Court for the district in which the state court that convicted and sentenced you is located.  If

26  you are challenging the execution of your sentence and you are not in prison in one of these counties,

27  your petition will likely be transferred to the district court for the district that includes the institution

28  where you are confined.  Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS          - 1 -

1   Who to Name as Respondent

2          You must name the person in whose actual custody you are.  This usually means the Warden or

3   jailor.  Do not name the State of California, a city, a county or the superior court of the county in which

4   you are imprisoned or by whom you were convicted and sentenced.  These are not proper

5   respondents.

6          If you are not presently in custody pursuant to the state judgment against which you seek relief

7   but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8   custody you are now and the Attorney General of the state in which the judgment you seek to attack

9   was entered.

10  A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11         1.  What sentence are you challenging in this petition? 265 years to life

12              (a)     Name and location of court that imposed sentence (for example; Alameda

13                      County Superior Court, Oakland):

14                      Alameda County Superior Cort    OAKland

15                      Court                           Location

16              (b)     Case number, if known  A106140

17              (c)     Date and terms of sentence  March 18 2004  265 years to life

18              (d)     Are you now in custody serving this term?  (Custody means being in jail, on

19                      parole or probation, etc.)          Yes X       No _____

20                      Where? Salinas Valley state Prison

21                      Name of Institution: Salinas Valley State Prison

22                      Address: P.O. Box 1050, Soledad, CA. 93960

23         2.  For what crime were you given this sentence?  (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known.  If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26  Count 1 First degree burglary(459) Count 2 Forcible lewd Act upon child (288)(B)(1)

27  Count 3 Aggravated Sexual assault of a Child (269)(A)(4), (269)(A)(5) Count 4, 5, 6

28  7, 8, 9, 10 are all the Same.

3. Did you have any of the following?

    Arraignment:                          Yes _X_      No _____

    Preliminary Hearing:           Yes _X_      No _____

    Motion to Suppress:            Yes _X_      No _____

4. How did you plead?

    Guilty _____    Not Guilty _X_    Nolo Contendere _____

    Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

    Jury _X_    Judge alone _____    Judge alone on a transcript _____

6. Did you testify at your trial?           Yes _____      No _X_

7. Did you have an attorney at the following proceedings:

    (a)    Arraignment           Yes _X_      No _____

    (b)    Preliminary hearing     Yes _X_      No _____

    (c)    Time of plea           Yes _X_      No _____

    (d)    Trial                 Yes _X_      No _____

    (e)    Sentencing            Yes _X_      No _____

    (f)    Appeal               Yes _X_      No _____

    (g)    Other post-conviction proceeding    Yes _X_      No _____

8. Did you appeal your conviction?        Yes _X_      No _____

    (a)    If you did, to what court(s) did you appeal?

        Court of Appeal          Yes _X_      No _____

        Year: _06_      Result: _Affirmed_

        Supreme Court of California    Yes _X_      No _____

        Year: _06_      Result: _Affirmed_

        Any other court _Superior Court_    Yes _X_      No _____
of California (The county of Alameda
        Year: _06_      Result: _Affirmed_

    (b)    If you appealed, were the grounds the same as those that you are raising in this

1    petition?                                          Yes X̶       No_____

2    (c)    Was there an opinion?                       Yes _____   No X̶

3    (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                                                       Yes _____   No X̶

5           If you did, give the name of the court and the result:

6           _____

7           _____

8    9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9    this conviction in any court, state or federal?    Yes _____   No X̶

10          [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11   challenged the same conviction you are challenging now and if that petition was denied or dismissed

12   with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13   for an order authorizing the district court to consider this petition.  You may not file a second or

14   subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15   U.S.C. §§ 2244(b).]

16   (a)    If you sought relief in any proceeding other than an appeal, answer the following

17          questions for each proceeding.  Attach extra paper if you need more space.

18   I.     Name of Court: Alameda County superior court, Oakland

19          Type of Proceeding: Habeas Corpus

20          Grounds raised (Be brief but specific):

21          a. Pre Judical error

22          b. Prosecution Misconduct

23          c. Consecutive Sentences

24          d. Grounds raised Continues (II)

25          Result: _____ Date of Result:_____

26   II.    Name of Court: _____

27          Type of Proceeding: _____

28          Grounds raised (Be brief but specific):  --

a. Resentenced because of the consecutive sentences.

b. Cruel and unusual Punishment.

c. Cunningham V. California Modification of Sentence.

d. _____

Result: Affirmed _____ Date of Result: 7/9/08

III.    Name of Court: _____

Type of Proceeding: _____

Grounds raised (Be brief but specific):

a. _____

b. _____

c. _____

d. _____

Result: _____ Date of Result: _____

IV.    Name of Court: _____

Type of Proceeding: _____

Grounds raised (Be brief but specific):

a. _____

b. _____

c. _____

d. _____

Result: _____ Date of Result: _____

(b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes _____    No ✗

Name and location of court: _____

B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS

1  need more space.  Answer the same questions for each claim.

2      [Note:  You must present ALL your claims in your first federal habeas petition.  Subsequent

3  petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467,  111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5  Claim One: Prejudical  error,

6  _____

7  Supporting Facts: See  attached  argument.

8  _____

9  _____

10 _____

11 Claim Two: Prosecution  Misconduct,

12 _____

13 Supporting Facts: See attached argument.

14 _____

15 _____

16 _____

17 Claim Three: Petitoner must be resentenced because

18 of the consecutive sentences,

19 Supporting Facts: See attached argument.

20 _____

21 _____

22 _____

23     If any of these grounds was not previously presented to any other court, state briefly which

24 grounds were not presented and why:

25 Claim 4,5,6, See attached claims

26 _____

27 _____

28 _____

PET. FOR WRIT OF HAB. CORPUS        - 6 -

Claim Four: Petitioner must be resentenced because of the consecutive sentences.

Supporting Facts: See attached argument.

Claim Five: Sentence violates the state and federal prohibition against cruel and unusual punishment.

Supporting Facts: See attached argument.

Claim Six: Cunningham v. California = Modification of sentence.

Supporting Facts: See attached state argument.

1        List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning

3    of these cases:

4    _____ See attached argument _____

5    _____

6    _____

7    Do you have an attorney for this petition?                          Yes_____        No X

8    If you do, give the name and address of your attorney:

9    _____

10        WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11    this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13    Executed on ___8/3/08_____                    _Averil O Bugg____

14               Date                                                   Signature of Petitioner

15

16

17

18

19

20    (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS          - 7 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit A

(see attached argument)
Petition for review

**TOPICAL INDEX**

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

PETITION FOR REVIEW  . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . -2-

STATEMENT OF THE CASE AND STATEMENT OF FACTS . . . . . . . . . . . . . . . -2-

WHY REVIEW SHOULD BE GRANTED . . . . . . . . . . . . . . . . . . . . . . . -3-

I.    THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT DENIED
      PETITIONER'S MOTION FOR A MISTRIAL BASED ON PROSECUTION'S
      MISUSE OF   PEREMPTORY CHALLENGES TO EXCUSE AFRICAN-
      AMERICAN PROSPECTIVE JURORS, IN VIOLATION OF HIS RIGHTS
      GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS AND
      ARTICLE I, SECTION 16 OF THE CALIFORNIA CONSTITUTION. . . . . . . . -4-

II.   PETITIONER'S CONVICTION MUST BE REVERSED BECAUSE THE
      COMMENTS OF THE PROSECUTOR AND THE TRIAL COURT CREATED
      AN UNACCEPTABLE RISK THAT THE JURY CONVICTED IN PART
      BECAUSE PETITIONER DID NOT TESTIFY. . . . . . . . . . . . . . . . . -5-

III.  PETITIONER MUST BE RE-SENTENCED IF THE JUDGMENT IS OTHERWISE
      AFFIRMED BECAUSE THE IMPOSITION OF CONSECUTIVE SENTENCES UNDER
      PENAL CODE SECTION 667.6, SUBDIVISION (D) IS IMPROPER WHEN THE
      OFFENSE IN QUESTION IS A VIOLATION OF PENAL CODE SECTION 269.  -6-

IV.   IF THE JUDGMENT AND SENTENCE ARE OTHERWISE AFFIRMED, THE
      CAUSE MUST BE REMANDED FOR RE-SENTENCING UNDER
      COMPULSION OF *BLAKELY V. WASHINGTON* (2004) 124 S.CT. 2531
      BECAUSE THE CHOICE OF THE CONSECUTIVE SENTENCE WAS
      MANDATORY UNDER SECTION 667.6, SUBDIVISION (D) WAS
      MANDATORY AND NOT DISCRETIONARY. . . . . . . . . . . . . . . . . . -7-

V.    PETITIONER'S SENTENCE VIOLATES THE STATE AND FEDERAL
      PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT. . . . . . . . -8-

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

i

## TABLE OF AUTHORITIES

### CASES

*Blakely v. Washington* (2004) 542 U.S.296  .................................................... 8

*Ewing v. California* (2003) 538 U.S. 11  ......................................................... 9

*Johnson v. California* (2005) 125 S.Ct. 2410  ................................................. 6

*Miller-El v. Dretke* (2005) 125 S.Ct. 2317  ................................................. 5, 6

*People v. Benson* (1990) 54 Cal.3d 754                                                    6

*People v. Black* (2005) 35 Cal.4th 1238  .................................................... 4, 7

*People v. Briggs*, ...........  .......................................................................... ...

*People v. Deloza* (1998) 18 Cal.4th 585  ........................................................ 9

*People v. Hicks* (1993) 6 Cal.4th 784  ............................................................ 8

*People v. Hill* (1998) 17 Cal.4th 800  ............................................................. 6

*People v. Jiminez* (2000) 80 Cal.App.4th 286  ............................................... 7

*People v. Johnson* (2003) 30 Cal.4th 1302 reversed on other grounds  .......... 6

*People v. Kirkes* (1952) 39 Cal.2d 719  .......................................................... 6

*People v. Lopez* (2003) 31 Cal.4th 1051  ........................................................ 7

*People v. Morris* (1988) 46 Cal.3d 1 argued  ................................................. 6

*United States v. Booker* (2005) 125 S.Ct. 738  ............................................... 8

### STATUTES

Penal Code section 667.6  ................................................................................ 3

Penal Code section 269................................................................................... 3

IN THE SUPREME COURT OF STATE OF CALIFORNIA

PEOPLE OF THE STATE OF CALIFORNIA,       )
                                         )
             Plaintiff and Respondent,   )
                                         )
                    v.                   )
                                         )
AVERILL BRIGGS,                          )
                                         )
             Defendant and Appellant.    )
_____    )

**PETITION FOR REVIEW**

TO:   THE HONORABLE RONALD GEORGE, CHIEF JUSTICE,
      AND TO THE HONORABLE ASSOCIATE JUSTICES
      OF THE SUPREME COURT OF THE STATE OF CALIFORNIA:

         Petitioner, AVERILL BRIGGS, by and through counsel, hereby petitions for

review, pursuant to California Rules of Court, rule 28, and California Rules of Court,

rule 29, following a decision of the Court of Appeal for the First Appellate District,

Division One, filed June 15, 2006.[1]

---

[1]   The opinion of the Court of Appeal is attached to this petition as Appendix A.

## ISSUES PRESENTED FOR REVIEW

WHETHER THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT DENIED PETITIONER'S MOTION FOR A MISTRIAL BASED ON PROSECUTION'S MISUSE OF PEREMPTORY CHALLENGES TO EXCUSE AFRICAN-AMERICAN PROSPECTIVE JURORS, IN VIOLATION OF HIS RIGHTS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS AND ARTICLE I, SECTION 16 OF THE CALIFORNIA CONSTITUTION.

WHETHER PETITIONER'S CONVICTION MUST BE REVERSED BECAUSE THE COMMENTS OF THE PROSECUTOR AND THE TRIAL COURT CREATED AN UNACCEPTABLE RISK THAT THE JURY CONVICTED IN PART BECAUSE PETITIONER DID NOT TESTIFY.

WHETHER PETITIONER MUST BE RE-SENTENCED IF THE JUDGMENT IS OTHERWISE AFFIRMED BECAUSE THE IMPOSITION OF CONSECUTIVE SENTENCES UNDER PENAL CODE SECTION 667.6, SUBDIVISION (D) IS IMPROPER WHEN THE OFFENSE IN QUESTION IS A VIOLATION OF PENAL CODE SECTION 269.

WHETHER, IF THE JUDGMENT AND SENTENCE ARE OTHERWISE AFFIRMED, THE CAUSE MUST BE REMANDED FOR RE-SENTENCING UNDER COMPULSION OF *BLAKELY V. WASHINGTON* (2004) 124 S.CT. 2531 BECAUSE THE CHOICE OF THE CONSECUTIVE SENTENCE WAS MANDATORY UNDER SECTION 667.6, SUBDIVISION (D) WAS MANDATORY AND NOT DISCRETIONARY.

WHETHER PETITIONER'S SENTENCE VIOLATES THE STATE AND FEDERAL PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT.

## STATEMENT OF THE CASE AND STATEMENT OF FACTS

Petitioner adopts the procedural history and facts as they appear in the opinion of the Court of Appeal, to which the Court is respectfully referred, except as otherwise noted in the argument section of this petition.

## WHY REVIEW SHOULD BE GRANTED

This petition raises issues properly presented to this Court, involving significant questions of law that ought to be decided by this Court. In particular, the case raises the issue of whether the trial court's imposition of mandatory consecutive sentences

under Penal Code section 667.6, subdivision (d)[2] was erroneous.  There are two reasons why it was.  The first reason is that it is not clear that the mandatory consecutive sentences required by section 667, subdivision (d) apply to the violations of section 269.[3]  The second is that, as the Court of Appeal suggests in this case, it is not clear whether this Court intended its holding in *People v. Black* (2005) 35 Cal.4th 1238 to apply to the imposition of consecutive sentences under the rubric of section 667.6, subdivision (d).  (See slip op. at pp. 19-22.)

In addition, petitioner is entitled to relief under federal constitutional principles, and it is a requirement of federal procedural law that petitioner fairly present his claims to this Court as a pre-condition for federal habeas corpus relief, if this Court denies relief.

---

[2]  Further unspecified references are to the Penal Code.

[3]  The issue was arguably before the Court in *People v. Dalby*, S129810, however, review was dismissed in that case and the cause remanded to the Court of Appeal.  (*People v. Dalby* (2005) 34 Cal.Reptr.3d 194.)

## ARGUMENT

I.   **THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT DENIED PETITIONER'S MOTION FOR A MISTRIAL BASED ON PROSECUTION'S MISUSE OF PEREMPTORY CHALLENGES TO EXCUSE AFRICAN-AMERICAN PROSPECTIVE JURORS, IN VIOLATION OF HIS RIGHTS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS AND ARTICLE I, SECTION 16 OF THE CALIFORNIA CONSTITUTION.**

In the Court of Appeal, petitioner argued that the trial court's refusal to allow him to rebut the prosecution's explanation of why she struck certain minority jurors was prejudicial error, violating the Sixth and Fourteenth Amendments. Petitioner submitted the ... ..., that the prosecution proposed reasons for challenging certain minority jurors applied equally to non-minority jurors – in a motion for new trial containing a comparative analysis tending to show that the reasons used to strike the minority jurors was pretextual. (See *Miller-El v. Dretke* (2005) 125 S.Ct. 2317, 2325.) The trial court dismissed this evidence as irrelevant, and telling defense counsel that "if you're planning on making another speech, that's out." (RT 2690-2692.)

Notwithstanding the overt hostility of the trial judge, the Court of Appeal found no error because defense counsel did not try harder to present the comparative evidence before the jury was finally impaneled and that it was too late for the trial court to meaningfully consider the comparative evidence when defense counsel finally managed to get it in after trial. (Slip op. at p. 12.) The Court of Appeal then tacks in the opposite direction, saying that *it* had reviewed the comparative evidence and was able to do two years later what it was too late for the trial court to do four months after the jury was impaneled and the new trial motion was brought, i.e., decide that the comparative evidence would not have changed the result. (Slip op. at pp. 12-13.)

It is clear that the trial court's hostility to the comparative evidence, to the extent that it was based on California law, was at odds with the subsequently decided case of *Miller-El*

*v. Dretke* (2005) 125 S.Ct. 2317.  Moreover, it is also clear that the time to have considered that evidence was prior to the impanelment of the jury.  ( *People v. Johnson* (2003) 30 Cal.4th 1302, 1319, reversed on other grounds by*Johnson v. California* (2005) 125 S.Ct. 2410.)  This Court should grant review and make it clear that it expects trial courts to follow *Miller-El* and that failure to do will not be excused by after-the-fact appellate review.

## II.  PETITIONER'S CONVICTION MUST BE REVERSED BECAUSE THE COMMENTS OF THE PROSECUTOR AND THE TRIAL COURT CREATED AN UNACCEPTABLE RISK THAT THE JURY CONVICTED IN PART BECAUSE PETITIONER DID NOT TESTIFY.

In this case the prosecutor, quoting from this Court's opinion in *People v. Morris* (1988) 46 Cal.3d 1, 35-36, argued to the jury that if he had any alibi evidence to offer he would have offered it.  When defense counsel objected, the court said, in the presence of the jury, "It's not commenting on refusal to testify. . . .  She can talk about that.  She cannot talk about his failure to testify."  (RT 2581-2583.)

Petitioner contended that the prosecutor's comments, aggravated by the judge's extremely prejudicial characterization of petitioner's exercise of his right to put the government to its proof as a "refusal to testify" poisoned the trial and required reversal.  The Court of Appeal held the argument waived because defense counsel did not request that the trial court correct her ill-advised remarks with an admonition.  (Slip. op. at p. 16.)  The Court of Appeal's ruling is at odds with  *People v. Hill* (1998) 17 Cal.4th 800, 820 and *People v. Benson* (1990) 54 Cal.3d 754, 794 and a host of other cases that hold that an objection is not required when an admonition would not cure the prejudice that occurred as the result of the improper argument.  In the present case, it is hard to imagine what effect further remarks by the trial court, even if purportedly corrective, would have had, other than to further impress on the jury the fact that petitioner did not testify.  (See *People v. Kirkes* (1952) 39 Cal.2d 719, 726.)  Review should be granted on this issue.

-5-

III.  **PETITIONER MUST BE RE-SENTENCED IF THE JUDGMENT IS OTHERWISE AFFIRMED BECAUSE THE IMPOSITION OF CONSECUTIVE SENTENCES UNDER PENAL CODE SECTION 667.6, SUBDIVISION (D) IS IMPROPER WHEN THE OFFENSE IN QUESTION IS A VIOLATION OF PENAL CODE SECTION 269.**

Petitioner was sentenced to full, separate and consecutive terms under section 667.6, subdivision (d) for each of his numerous convictions for violation of section 269. Subdivision does not include section 269 as one of the offenses that triggers the consecutive sentences imposed by section 667.6, subdivision (d). One would think that this would end the matter. "If the statutory language is clear and unambiguous, the plain meaning of the statute governs (Citation.)." (People v. Lopez (2003) 31 Cal.4th 1051, 1056.) However, the only extant published opinion on the subject, *People v. Jiminez* (2000) 80 Cal.App.4th 286, 291-292, holds that this is not so. This Court should grant review and decide whether *Jiminez*'s novel approach to statutory construction, which seems based entirely on a desire to avoid what it perceives to be a windfall to certain sex offenders, and which was adopted in this case, should continue to be the law in California.

IV.  **IF THE JUDGMENT AND SENTENCE ARE OTHERWISE AFFIRMED, THE CAUSE MUST BE REMANDED FOR RE-SENTENCING UNDER COMPULSION OF *BLAKELY V. WASHINGTON* (2004) 124 S.CT. 2531 BECAUSE THE CHOICE OF THE CONSECUTIVE SENTENCE WAS MANDATORY UNDER SECTION 667.6, SUBDIVISION (D) WAS MANDATORY AND NOT DISCRETIONARY.**

If the sentencing court finds that the crimes at issue were committed on "separate occasions," section 667.6, subdivision (d) makes a consecutive sentence mandatory. In *People v. Black* (2005) 35 Cal.4th 1238, this Court held that the requirement that a fact like the existence vel non of "separate occasions" need not, in general, be found beyond a reasonable doubt by a jury because the Supreme Court's jurisprudence on this issue "a constitutionally significant distinction between a sentencing scheme that permits judges to engage in the type of judicial factfinding typically and traditionally involved in the exercise

of judicial discretion employed in selecting a sentence from within the range prescribed for an offense, and a sentencing scheme that assigns to judges the type of factfinding role traditionally exercised by juries in determining the existence or nonexistence of elements of an offense." (Id. at p. 1253.) As the Court of Appeal noted in this case, the consecutive sentence choice embodied in section 667.6, subdivision (d) is

mandatory and thus the equivalent of one made by a jury and not by a judge at sentencing, and thus it would seem that the rule of *Blakely v. Washington* (2004) 542 U.S. 296 and *United States v. Booker* (2005) 125 S.Ct. 738 should apply. The Court of Appeal felt itself constrained by *Black* to refrain from making this inference (slip op. at pp. 21-22); however, this Court should take this opportunity to decide whether the Sixth Amendment requires that a jury find beyond a reasonable doubt whether the offenses that trigger a consecutive sentence under section 667.6, subdivision (d) occurred on "separate occasions."

## V.    PETITIONER'S SENTENCE VIOLATES THE STATE AND FEDERAL PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT.

The sentence imposed in this case, 265 years to life, is, in effect a sentence of life without possibility of parole. "LWOP" sentences in California are reserved for a limited number of crimes, including treason (§ 37), perjury that procures the conviction and execution of an innocent person (§ 128), special circumstance murder (§ 190.1, subd. (a)), kidnaping for ransom involving the death or serious injury of the victim (§ 209, subd. (a)), and train wrecking causing death (§ 219). As serious as the conduct in the present case was, it does not rise to the level of those offenses.

As aptly noted by the late Justice Mosk, "many criminal sentences have crossed the bounds of reason in this state." (*People v. Hicks* (1993) 6 Cal.4th 784, 797 [dis. opn. of Mosk, J.].) "A grossly excessive sentence can serve no rational legislative purpose, under either a retributive or utilitarian theory of punishment. It is gratuitously extreme and demeans the government inflicting it as well as the individual on whom it is inflicted."

-7-

(*People v. Deloza* (1998) 18 Cal.4th 585, 601-602 [dis. opn. of Mosk, J.].)  In addition such sentences violate the proportionality principle contained in the Eighth Amendment. (*Ewing v. California* (2003) 538 U.S. 11, 20.)  Accordingly, this Court should grant review and remand for a new sentencing if the judgment is otherwise affirmed.

### CONCLUSION

For all the foregoing reasons, the Court should grant review and reverse the judgment of the Court of Appeal, or, alternatively, remand for re-sentencing.

Respectfully submitted,

John Ward, Counsel for Petitioner

# APPENDIX A

Filed 6/15/06  P. v. Briggs CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>AVERILL BRIGGS,<br><br>     Defendant and Appellant. | A106140<br><br>(Alameda County<br>  Super. Ct. No. 143894) |

     Averill Briggs timely appeals his jury-trial conviction and sentence of 265 years-to-life for burglary and various sexual offenses against two children under the age of 14 years.  Briggs contends (1) the trial court improperly denied his *Batson-Wheeler*[1] motion; (2) the prosecutor committed misconduct on closing argument by commenting on his failure to testify; (3) his sentence violates the state and federal prohibition against cruel and unusual punishments; (4) the trial court erred by imposing consecutive sentences; and, (5) the consecutive sentences were based on findings of fact in violation of *Blakely*.[2] We find no merit in Briggs' contentions and affirm the judgment.

---

[1]    (*Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*); *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*).)

[2]    (*Blakely v. Washington* (2004) 542 U.S. 296 (*Blakely*).)

## BACKGROUND

A third amended Information charged that on or about June 9, 2002, Averill Briggs entered a family residence with the intent to commit sexual assault, a first degree residential burglary in violation of Penal Code section 459.[3] Briggs was also charged with a forcible lewd act upon a child under the age of 14 years, Jane Doe #1, in violation of section 288(b)(1); 8 counts of aggravated sexual assault of a child under the age of 14 years, Jane Doe #2; comprising 4 counts of oral copulation, 2 counts of rape, sexual penetration with a foreign object, and sodomy, all in violation of section 269, subdivision (a). The Information also alleged Briggs committed the sexual offenses in the course of a first degree burglary and with the intent to commit an offense specified in section 667.61, subdivision (c), within the meaning of section 667.61, subdivision (d)(4). The Information further alleged Briggs committed an offense specified in section 667.61, subdivision (c) against more than one victim within the meaning of section 667.61, subdivision (e)(5). Last, the Information alleged Briggs has a previous conviction for second degree robbery in violation of section 211, which is a serious prior felony within the meaning of section 667, subdivision (a)(1), and a second strike within sections 1170.12, subdivision (c)(1) and 667, subdivision (e)(1).

Briggs is African-American. On the second day of trial, November 12, 2003, sixty-five prospective jurors were present on the jury panel. Three trial days later, on November 17, the trial court heard Briggs' *Batson-Wheeler* motion challenging the prosecutor's use of three peremptory challenges against prospective African-American jurors Georgia Mc., Lawrence L. and Sam R. The trial court stated the *Batson-Wheeler* motion "was noticed after the fourth challenge and remade after the 15th challenge of the prosecution." Defense counsel noted Lawrence L. was the first challenge exercised by the people, Georgia Mc. the fourth, and Sam R. the fifteenth. There were only four African-Americans on the jury panel, one of whom was excused for cause before the *Batson-Wheeler* motion. After the prosecutor explained her exercise of these peremptory

---

[3]     Unless otherwise noted, all further statutory references are to the Penal Code.

challenges, the trial court concluded her explanation was nondiscriminatory, and denied the *Batson-Wheeler* motion. When finally empanelled, the jury had no African-American members.

Trial began on November 19, 2003. The defense was mistaken identity. Briggs did not testify. Both Jane Does testified and identified Briggs as the intruder who sexually assaulted them. Also, both identified Briggs as their assailant at an earlier physical lineup on July 19, 2002. Briggs' fingerprints were recovered at the crime scene from a bent security bar and the glass of the bedroom window. Other facts will be recited as required.

On December 18, 2003, the jury returned verdicts of guilty on all counts and found all allegations true. On December 22, 2003, the trial court found the prior conviction true, and that it was a serious felony and a strike conviction. On March 26, 2004, defense counsel moved before sentencing for a new trial. In part, the motion was based on his renewed assertion the prosecutor improperly used peremptory challenges to exclude three prospective African-American jurors. The trial court denied the motion for a new trial. The trial court then imposed a sentence of 50 years to-life, followed by seven consecutive sentences of 30 years-to-life, plus five years for a prior conviction, for a total sentence of 265 years-to-life.

### DISCUSSION

#### *A.*    *Batson-Wheeler* **Motion**

As noted, defense counsel objected on *Batson-Wheeler* grounds to three peremptory challenges by the prosecutor against African-American prospective jurors Georgia Mc., Lawrence L., and Sam R., and the trial court overruled the objection. Briggs now contends the prosecutor's peremptory challenges of these prospective jurors violated his state and federal constitutional rights. Briggs also contends the trial court erred in its procedural handling of his *Batson-Wheeler* motion because it did not allow him to rebut the non-racial explanation for the challenges proffered by the prosecutor, and refused to consider the comparative jury analysis presented in his motion for a new trial.

3

## 1.    *The Peremptory Challenges*

" 'The use of peremptory challenges to remove prospective jurors on the sole ground of group bias violates the right to trial by a jury drawn from a representative cross-section of the community under article I, section 16 of the California Constitution [citation] as well as the equal protection clause of the Fourteenth Amendment to the United States Constitution [citations].' 'A party who suspects improper use of peremptory challenges must raise a timely objection and make a prima facie showing that one or more jurors has been excluded on the basis of group or racial identity. . . . Once a prima facie showing has been made, the prosecutor then must carry the burden of ~~showing that he or she had genuine nondiscriminatory reasons for the challenge at issue~~ [citation].' 'The trial court must then decide . . . whether the opponent of the strike has ~~proved purposeful . . . discrimination [citation].~~    (*People v. Ward* (2005) 36 Cal.4th 186, 200 (*Ward*).)

"The trial court's ruling on this issue is reviewed for substantial evidence [Citation.] We review a trial court's determination regarding the sufficiency of a prosecutor's justifications for exercising peremptory challenges 'with great restraint.' [Citation.] We presume that a prosecutor uses peremptory challenges in a constitutional manner and give great deference to the trial court's ability to distinguish bona fide reasons from sham excuses. [Citation.] So long as the trial court makes a sincere and reasoned effort to evaluate the nondiscriminatory justifications offered, its conclusions are entitled to deference on appeal. [Citation.] In fulfilling this obligation, the trial court is not required to make specific or detailed comments for the record to justify every instance in which a prosecutor's [nondiscriminatory] reason for exercising a peremptory challenge is being accepted by the court as genuine. This is particularly true where the prosecutor's [nondiscriminatory] reason for exercising a peremptory challenge is based on the prospective juror's demeanor, or similar intangible factors, while in the courtroom. [Citation.]" (*Ward, supra,* 36 Cal.4th at p. 200.)

Here, after defense counsel objected under *Batson-Wheeler*, the trial court found counsel stated a prima facie case the jurors had been dismissed on the basis of race, and

4

asked the prosecutor to justify her challenges. After hearing the prosecutor's explanation, the trial court stated it was satisfied the prosecutor had excluded the three prospective African-American jurors for non-racial reasons, and denied the *Batson-Wheeler* motion. Accordingly, we review the record to see whether substantial evidence supports the trial court's denial of Briggs' *Batson-Wheeler* motion. (*Ward, supra,* 36 Cal.4th at p. 200.)

### (a) *Georgia Mc.*

The prosecutor justified her challenge on the grounds Georgia Mc. equated a slight doubt with reasonable doubt and stated she would require more evidence in a sex case. In addition, the prosecutor pointed out Georgia Mc. stated in her jury questionnaire she would hesitate to convict on the word of one witness alone, and the prosecutor noted she used peremptory challenges against two non African-American prospective jurors, Mr. S. and Mr. H., for the same reason. As well, the prosecutor noted Georgia Mc. was ambivalent about whether victims of sex crimes were more or less believable [than other victims], was ambivalent about whether she could convict if she believed the victim's testimony beyond a reasonable doubt, admitted she was not a good judge of telling the truth, and might require the prosecution to provide DNA evidence depending on the strength of other evidence. The prosecutor also said she did not have a good rapport with Georgia Mc., and, "I got actually a cold stare with little eye contact, had no connection with her. And I noted that there was actually good rapport between defense attorney and herself."

On voir dire by the prosecutor, Georgia Mc. opined the prosecution's burden of proof should increase with the seriousness of the crime, and in a rape case it should be greater than in a theft case. Georgia Mc.'s view was that the prosecution "has to have a little bit more" in a rape case. Later, on voir dire by defense counsel, Georgia Mc. volunteered a definition of reasonable doubt as "a slight doubt in your mind." These comments support the prosecutor's explanation for the peremptory strike, even leaving aside the question of poor rapport between Georgia Mc. and the prosecutor. Thus, substantial evidence supports the trial court's finding that the prosecutor's reasons for challenging Georgia Mc. were nondiscriminatory.

5

### (b)    *Lawrence L.*

The prosecutor pointed out Lawrence L. had been accused of sexual harassment but failed to report it on his jury questionnaire. The prosecutor said she was concerned about Lawrence L.'s alleged sexual misconduct because she would assert Briggs "crossed some very serious lines." The prosecutor perceived a lack of candor on Lawrence L.'s part in "talking about this stuff" because he left blank the sections on his questionnaire dealing with the believability of victims of sexual assault and what evidence he would require in a sexual assault case. Moreover, Lawrence L. stated it would be difficult for him to convict on the basis of one witness because he was accused in a sexual harassment case. Therefore he would be inclined to hold the prosecution to a higher standard, and would not convict without DNA evidence. Another concern of the prosecutor, given she anticipated the defense would suggest the police influenced the teenage victims' identification of Briggs, was Lawrence L.'s opinion that the believability of a teenager is affected by what they see and hear at home.

On voir dire, Lawrence L. had difficulty with the idea that a conviction could be based on the testimony of a single individual. He stated, "That's tough, you know, who do you believe." The trial court attempted to allay his concerns: "So what she's just trying to see is if you can be a fair juror and not hold her to a higher or lower standard than the law requires." Lawrence L. responded: "That's difficult for me. I was in a sexual harassment case, and I didn't like the way it came out." When prompted further by the prosecutor on whether his experience would make him "more demanding than the law would require in terms of the evidence," he replied, "Yes." These exchanges bear out the concerns articulated by the prosecutor in justifying its challenge of Lawrence L. Accordingly, substantial evidence supports the trial court's finding that the prosecutor's reasons for challenging Lawrence L. were nondiscriminatory.

### (c)    *Sam R.*

The prosecutor stated the entire time she talked to Sam R. he openly chewed gum and made no effort to hide it, suggesting to her he wasn't taking the proceedings

6

seriously. She stated his answers were very curt and flippant, and, "He was sharp with me. There was absolutely no rapport between Mr. R[] and myself." The prosecutor said she tried to strike a chord with Sam R. by asking him, "Would you pick you if you were me?" But, she was rebuffed by his reply, "I can't answer that question because we're two individuals. I'm not you and you're not me." The prosecutor opined Sam R. "was basically not making any effort whatsoever or offering any explanation that could assist me in deciding what to do with Mr. R[]." As well, the prosecutor was concerned because Sam R. has daughters but said he felt no need to talk to them about protecting themselves in a case of sexual assault, and because he thought teenagers were susceptible to coaching. Also, the prosecutor stated Sam R. was evasive when asked to explain several items on the jury questionnaire. Furthermore, based on other answers on Sam R.'s questionnaire, the prosecutor was concerned he was "a physical evidence kind of guy," who would require more evidence in a sexual assault case.

Not everything the prosecutor said with respect to Sam R. finds support in the record. For example, the prosecutor questioned Sam R. about his response in the jury questionnaire that viewing "Crime Scene" and "C.S.I." on television affected his expectations about "the continual search for evidence." Sam R., however, replied that had not increased his expectation about what he expected to see here. Also, Sam R. said he would not require DNA evidence.

On the other hand, the prosecutor's main concern was Sam R.'s offhand demeanor and curt answers, which she thought indicated disinterest, evasiveness, hostility, and flippancy. When the prosecutor asked whether Sam R. discussed the subject of sexual assault with his children while they were growing up, he replied," No." When asked why not, he stated, "Never found a need to." In another exchange, the prosecutor asked Sam R. to explain his answer to a question on the jury questionnaire indicating he thought victims of sexual assault are less believable because of age and personal background. Sam R.'s response was, "Did I say that?" When prompted further, he stated: "Like I say, I misinterpreted the question, so." Sam R. also stated teenagers are more prone at times to be coached in questioning. When asked by the prosecutor why he checked "yes" in

7

response to a question asking if he had a bias against a racial or ethnic group, he replied, "Do I have a bias?" When prompted further, he said, "I probably misunderstood your question." The prosecutor concluded her voir dire by asking Sam R., "If you were me, would you pick you?" Sam R. replied: "I can't answer that question because we're two individuals. I'm not you, and you're not me."

Sam R.'s responses to the prosecutor's questions can be seen as curt, offhand, and not forthcoming. Certainly, nothing in the record contradicts the prosecutor's assertion she tried, but was unable, to strike up any rapport with Sam R., or her observation that he was "curt" and "sharp" with her. The record also supports her claim that he was evasive about certain responses he offered in the questionnaire. In addition, the trial court accepted the prosecutor's description of Sam R.'s gum-chewing demeanor without comment or contradiction. Where the trial court finds the prosecutor's stated reasons sincere and genuine, and those reasons are "based on the prospective juror's appearance and demeanor," the trial court's finding "is entitled to great deference." (*Ward, supra,* 36 Cal.4th at p. 202; see also *People v. Turner* (1994) 8 Cal.4th 137, 171 ["peremptory challenges are properly made in response to 'bare looks and gestures' by a prospective juror that may alienate one side [citation]".) On this record, therefore, we conclude substantial evidence supports the trial court's ruling that the prosecutor's reasons for challenging Sam R. were nondiscriminatory.

### 2.    *Procedural Issues*

Briggs contends the trial court erred procedurally in its handling of the *Batson-Wheeler* motion. First, relying on *People v. Fuentes* (1991) 54 Cal.3d 707 (*Fuentes*), he contends the trial court failed to question whether the prosecutor's asserted reasons actually applied to the excluded jurors, but instead simply made a blanket finding it was satisfied the prosecutor's reasons were not race based. *Fuentes,* however, has no application here. In *Fuentes,* the Supreme Court reversed a judgment of death because the trial court, in denying defendant's *Batson-Wheeler* challenge to the prosecutor's fourteen peremptory strikes against prospective African-American jurors, "found some of

8

the stated reasons genuine ('good') and some false ('spurious') and indicated which were
which, but . . . failed to consider which of the valid reasons applied to which jurors."
(*Fuentes, supra,* 54 Cal.3d at p. 718.) The Supreme Court concluded "the trial court
failed to take the next, necessary step of asking whether the asserted reasons actually
applied to the particular jurors whom the prosecutor challenged." (*Id.* at p. 721.) Here,
by comparison, the prosecutor offered a separate, individualized explanation for
challenging Lawrence L., Georgia Mc., and Sam R., so there is no doubt about which
reasons applied to which jurors. After hearing the explanations, the trial court declared
itself satisfied the prosecutor's reasons were nondiscriminatory. The trial court is
required to do no more. (*Ward, supra,* 36 Cal.4th at p. 200.) ["the trial court is not
required to make specific or detailed comments for the record to justify every instance in
which a prosecutor's [nondiscriminatory] reason for exercising a peremptory challenge is
being accepted by the court as genuine"].)

     Briggs also contends the trial court erred by denying defense counsel the
opportunity to rebut the prosecutor's proffered non-racial explanations for the challenged
peremptory strikes. The record shows that after the trial court denied the *Batson-Wheeler*
motion, defense counsel stated: "I'm not asking you to reverse your ruling. I just want to
perfect the record on this just very briefly," to which the court replied; "I wanted to hear
what she had to say about why she relieves the people, and I did, and I'm satisfied. So
we're not going to keep going on that." Moments later, the following exchange took
place:

| | |
|---|---|
| Defense: | I don't want to take up the court or anybody else's time, I want to state a couple of things for the record, and that's all I want to do. |
| Court: | No more on this *Wheeler.* No more on *Wheeler.* |
| Defense: | Not argument. I just want to clarify a couple of factual misstatements. That's all. |
| Court: | Well, the record speaks for itself, because she has her reasoning and all I'm going on is her reasoning. |
| Defense: | Okay. |

9

On this record, it is by no means clear defense counsel, as Briggs now claims, attempted to offer a pointed rebuttal to the prosecutor's explanations for the peremptory strikes: To the extent defense counsel was explicit in his remarks at all, it was to say he did not seek to reverse the court's ruling or argue the motion further. Moreover, it may be in this case the trial judge thought the prosecutor's explanation so comported with its own recollection of the evidence that it did not need to hear rebuttal before issuing its ruling. While it may be the better practice for the trial court to invite rebuttal before proceeding to the third step of the *Batson-Wheeler* inquiry, in which the trial court rules " ' "whether the opponent of the strike has proved purposeful . . . discrimination," ' " (*Ward*, *supra*, 36 Cal.4th at p. 200), the trial court still adhered to the familiar three-step process for *Batson-Wheeler* motions, and as long as "the inquiry proceeds within th[at] general framework, . . . no particular procedures are constitutionally required." (*People v. Ayala* (2000) 24 Cal.4th 243, 261.)

In pressing his claim he was denied rebuttal, Briggs also faults the trial court for refusing to consider the comparative jury analysis[4] he presented in his motion for a new trial.[5] In announcing its ruling at the hearing on the motion for a new trial, the trial court stated: "All right. I appreciate the work that you did to get all of this [comparative juror] analysis. The only thing, when you're dealing with a [*Batson-Wheeler*] situation, you're dealing with that particular juror. I'm not comparing that juror to every other juror who was dismissed or kept or whatever was going on it that situation. [¶] . . . And in this case, as in any other case, [the prosecutor] was given an opportunity to explain, and the court was satisfied that there was a race-neutral, not a race-based reason for her getting rid of

---

[4]     Comparative juror analysis is the practice, in the context of a *Batson-Wheeler* motion, of "compar[ing] the answers of challenged jurors with those of nonchallenged jurors" for purposes of rebutting the prosecutor's proffered nondiscriminatory reasons for the challenged peremptory strikes. (*People v. Johnson* (2003) 30 Cal.4th 1302, 1308 (*Johnson*), reversed on other grounds by *Johnson v. California* (2005) 125 S.Ct. 2410.)

[5]     Briggs does not directly challenge the trial court's denial of his motion for a new trial, which this court will not disturb absent a "manifest and unmistakable abuse of discretion." (*People v. Delgado* (1993) 5 Cal.4th 312, 328.)

10

these jurors. [¶] There was a race-neutral reason for each one of the three that you were concerned about."

The trial court ruled on the *Batson-Wheeler* motion on November 17, 2003. Jury selection continued for the remainder of the afternoon, the jury was sworn in on the morning of November 18, and the court adjourned that day at 2:20 p.m. The jury trial commenced on the morning of November 19. During this interval, defense counsel made no formal offer of proof concerning either comparative juror analysis or any other grounds for rejecting the prosecutor's proffered explanation for striking the three prospective African-American jurors. After a trial lasting twenty-one days, the jury returned its verdict on December 18, 2003. At no time during trial did defense counsel make an offer of proof concerning rebuttal he could have offered to the prosecutor's explanation for her challenged peremptory strikes. In fact, Briggs first set forth his comparative juror analysis in a memorandum in support of his motion for a new trial, filed on March 22, 2004. This was over four months after the trial court denied his *Batson-Wheeler* motion and over three months after the jury returned its verdict.

Even if the trial court did not consider Briggs' comparative juror analysis at the motion for new trial, we cannot fault it under these facts. Our case law is clear that comparative juror analysis is inappropriate for the first time on appeal. (*Johnson, supra,* 30 Cal.4th at p. 1325.) In disapproving comparative juror analysis for the first time on appeal, the Supreme Court stated: " '[T]he very dynamics of the jury selection process make it difficult, if not impossible, *on a cold record,* to evaluate or compare the peremptory challenge of one juror with the retention of another juror *which on paper appears to be substantially similar.* Attempting to make such an analysis of the prosecutor's use of his peremptory challenges is highly speculative and less reliable than the determination made by the trial judge who witnessed the process by which the defendant's jury was selected.' " (*Johnson, supra,* 30 Cal.4th at p. 1319 [italics added, brackets and citation omitted]; see also *People v. Heard* (2003) 31 Cal.4th 946, 971 [because "neither the trial court nor defense counsel engaged in any comparative juror analysis at trial," defendant could not raise that claim on appeal].)

11

Most of the drawbacks to an appellate court applying comparative juror analysis also apply to the motion for a new trial made in this case. Four months after denying the *Batson-Wheeler* motion, the trial court was presented with a comparative juror analysis after defense counsel had combed through the questionnaires of the seated jurors looking for possible inconsistencies. This is not the manner in which to conduct a *Batson-Wheeler* inquiry. Our cases emphasize that great deference is accorded the trial court in these matters because, " 'Whether or not "all the relevant circumstances" "raise an inference" of discrimination will depend on factors such as the attitude and behavior of the challenging attorney and the prospective jurors manifested during voir dire. As a purely practical matter, the trial judge's unique perspective of voir dire enables the judge to have first-hand knowledge and observation of critical events. [Citation.] The trial judge personally witnesses the totality of circumstances that comprises the "factual inquiry," including the jurors' demeanor and tone of voice as they answer questions and counsel's demeanor and tone of voice in posing the questions. [Citation.] The trial judge is able to observe a juror's attention span, alertness, and interest in the proceedings and thus will have a sense of whether the prosecutor's challenge can be readily explained by a legitimate reason.' " (*Johnson, supra*, 30 Cal.4th at p. 1320.) Most of this is lost when the trial court is asked to revisit a *Batson-Wheeler* issue four months after voir dire.

Furthermore, we need not decide today whether comparative juror analysis may be considered on appeal if it was made part of the record at *some point* before judgment but was not offered before the trial court ruled on the *Batson-Wheeler* motion. That is because we have reviewed Briggs' comparative juror analysis ("analysis") and find nothing in it which undermines our earlier conclusion that substantial evidence supports the trial court's *Batson-Wheeler* ruling.

The analysis points out various instances where the challenged juror's response to a particular question on the jury questionnaire is the same or similar to a seated juror's response. For example, many of the jurors seated, like prospective juror Georgia Mc., expressed reservations about convicting without DNA evidence. However, the prosecutor based her strikes on voir dire as well as jury questionnaires, and the analysis

12

does not dispel the testimony of Georgia Mc., who stated she would require a higher
burden of proof in a rape case, or Lawrence L., who admitted he had been the accused in
a sexual harassment case. Similarly, the analysis points out "very prosecution-favorable"
responses on Sam R.'s questionnaire, including contact with the Alameda Sheriff in his
job. This does not undermine the prosecutor's reason that it was Sam R.'s demeanor, as
well as his perceived flippancy and evasiveness when asked about his questionnaire
responses, which prompted her strike. Only the trial court is in a position to assess
whether the prosecutor's concern is genuine or merely a pretext for discrimination, and
this can be done most reliably only during voir dire. In sum, while we are mindful the
high court has indicated comparative juror analysis may, in certain circumstances,
provide powerful evidence of discrimination, (*Miller-El v. Dretke* (2005) __ U.S. __, 125
S.Ct. 2317), we think this is the more typical case where after-the-fact comparative juror
analysis is "largely beside the point because of the legitimate subjective concerns that go
into selecting a jury[,] [and] . . . [while] not *irrelevant*, . . . proves little." (*Johnson,
supra,* 30 Cal.4th at p. 1323 [citation omitted].)

## B.    *Prosecutorial Misconduct*

Briggs contends the prosecutor impermissibly commented in closing argument on
his failure to testify, in violation of *Griffin v. California* (1965) 380 U.S. 609 (*Griffin*).
Under the *Griffin* rule, neither the prosecutor nor the court may comment, "either directly
or indirectly, upon defendant's failure to testify. It is well established, however, that the
rule prohibiting comment on defendant's failure to testify 'does not extend to comments
on the state of the evidence or on the failure of the defense to introduce material evidence
or to call logical witnesses' [citation]." (*People v. Morris* (1988) 46 Cal.3d 1, 35
(*Morris*), disapproved on another ground in *In re Sassounian*, (1995) 9 Cal.4th 535, 543-
544 at fn. 5.)

At trial the following exchanges took place in the course of the prosecutor's
closing argument on rebuttal:

13

Prosecutor:    I want to say one thing to dispel, once and for all, hopefully, this mistaken
               I.D. thing. And I'm going to read from a case, *People v. Morris*. "Keep in
               mind that there is not a shred of evidence. Not a shred to suggest that
               anybody else did the [sexual assault] other than the defendant. Not a shred.
               There is not a shred of evidence to indicate that defendant was anywhere
               else on the morning of the crime" other than with Jane Doe 1 and 2.

Defense:       Your honor, . . . I object, and I think that goes to commenting on testifying.

Court:         Is that the case? That's the case you quoted?

Defense:       No. I don't care what case it is. I'm objecting to the language saying he
               should testify. He has a right not to, and she can't talk about it. I'm citing
               that as misconduct.

Court:         You cannot say –

Defense:       I object.

Prosecutor:    Judge, that's not what was said. I'm reading 46 Cal 3d 1. It's a California
               Supreme Court case, *People v. Morris*.

Court:         I let you quote it. She's going to finish quoting it.

               Okay. Go ahead. You guys want to do that, then go on and do it.

Prosecutor:    "Put yourself in the position of being a defendant, and you can bet your
               boots that if you had anything to offer by way of evidence, by way of alibi,
               that you would offer it. Be assured of that."

Defense:       I'm objecting again. Actually, this is a continuing objection. I think this is
               misconduct. I think it's commenting on the refusal to testify.

Court:         It's not commenting on the refusal to testify.

Defense:       Okay. And I'm asking for a curative instruction.

Court:         Overruled.

               Be careful where you're going with that.

Prosecutor:    I've got one more sentence to read with regard to *People v. Morris*.

Defense:       I have a motion at the conclusion of this.

14

| | |
|---|---|
| Prosecutor: | "Be assured of the fact that any defense attorney would make sure that if any such evidence existed, you would have it. You do not have it." |
| Defense: | I object. I cite that as misconduct, and I think – |
| Court: | Overruled. |
| Defense: | *Griffin-Doyle* error. |
| Court: | Counsel, that is not. She can – |
| Defense: | Okay. |
| Court: | She can talk about that. She cannot talk about his refusal to testify. |
| Defense: | May I just add? |
| Court: | We'll do it after she finishes, outside the presence of the jury. |

The prosecutor's comments in this case were a direct quote (only substituting the crime at issue and inserting a reference to the Doe victims) of the prosecutor's comments in *Morris*, and the prosecutor's comments in *Morris* were challenged as an improper reference to the defendant's choice not to testify. (See *Morris, supra,* 46 Cal. 3d at p.35-36.) We do not say that quoting from a published opinion will always immunize the prosecution from claims of misconduct at closing argument. On this occasion, however, we conclude, as did the Supreme Court in *Morris*, that the prosecutor's remarks did not go beyond "referr[ing] to the state of the evidence[,] . . . [and] were properly confined to the absence of 'evidence' or 'alibi'." (*Morris, supra,* 46 Cal.3d at p.36.) The prosecutor made "no reference—express or implied—to defendant's silence, and therefore [her remarks were] not objectionable." (*Ibid.*) Thus, Briggs' claim of *Griffin* error fails.

Briggs suggests the trial court compounded the *Griffin* error because it stated, "She cannot talk about his failure to testify" when ruling on defense counsel's objection to the prosecutor's quote from *Morris*. After that remark, the trial court advised defense counsel the matter would be continued outside the presence of the jury. The prosecutor concluded rebuttal and the trial court then instructed the jury. Among the instructions was CALJIC 2.60: "A defendant in a criminal trial has a constitutional right not to be compelled to testify. You must not draw any inference from the fact that a defendant does not testify. Further, you must neither discuss this matter nor permit it to enter into

15

you deliberations in any way." At the hearing next morning, defense counsel clarified his objections to the prosecutor's closing argument. He stated: "One, I objected to the language I believe the court is aware comes out of the *Morris* opinion almost verbatim, but I'm objecting nonetheless, in that it's, those comments and comments like them during that portion of the prosecutor's closing argument constitute *Griffin* error in their comment, in that it comes very close to commenting on my client's not testifying. And so I would assign that as misconduct, request a curative admonition to the jury, and I would move for a mistrial in the alternative." Counsel's comments were directed entirely at the prosecutor, and he did not suggest the trial court's own remarks constituted or compounded any *Griffin* error. Nothing counsel said put the trial court on notice that its own comments might be construed as *Griffin* error on appeal. Accordingly, Briggs waived any claim the trial court's comments contributed to, or constituted, *Griffin* error. (*People v. Brown* (2003) 31 Cal.4th 518, 553 ["To preserve a [misconduct] claim . . . for appeal, a criminal defendant must make a timely objection, make known the basis of his objection, and ask the trial court to admonish the jury"].)

### C. Sentencing Issues

#### 1. Cruel and Unusual Punishment

Briggs contends his sentence is so disproportionate to his crime it violates the California state and federal constitutions. It is well established, however, that in order to violate the cruel and unusual punishment proscriptions of the federal and California state constitutions, the sentence imposed must be so extreme and grossly disproportionate such that it "shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424; cf. *Lockyer v. Andrade* (2003) 538 U.S. 63, 77 ["The gross disproportionality principle reserves a constitutional violation for only the extraordinary case"]; *Ewing v. California* (2003) 538 U.S. 11, 21-22 [stating "successful challenges to the proportionality of particular sentences should be exceedingly rare"]; *Harmelin v. Michigan* (1991) 501 U.S. 957, 1001 ["Eighth Amendment . . . forbids only extreme sentences that are 'grossly disproportionate' to the crime"] [Kennedy, J.,

16

concurring in part and concurring in the judgment]; *In re Lynch, supra,* 8 Cal.3d 410, 424.) The burden of demonstrating such disproportionality rests with the defendant. (*People v. Weddle* (1991) 1 Cal.App.4th 1190, 1196-1197.) "Findings of disproportionality have occurred with exquisite rarity in the case law." (*Id.* at p. 1196.)

Although, as Briggs notes, his sentence may effectively be life without possibility of parole, it cannot be said to be grossly disproportionate to the heinous nature of the crimes he committed. In the dead of night, Briggs climbed through a window into the bedroom of a thirteen-year-old teenage girl, Jane Doe #1. In an adjacent bedroom slept Jane Doe #2, who, tragically, happened to be staying overnight. Jane Doe #1 awoke to find Briggs lying in bed next to her. Briggs put his hand around Jane Doe #1's neck and told her to shut up or he would kill her family. Briggs got off the bed, put his hand inside his pants and moved it on his penis. Briggs blocked the door, repeated this act of masturbation, and when Jane Doe #1 moved to the foot of the bed, Briggs told her to lie down or he would kill her family. Moving to the next bedroom, he accosted Jane Doe #2, age thirteen. Briggs removed her pants, licked her vagina, penetrated her vagina with his finger, raped her, ordered her to remove her shirt and brassiere, licked her breast, raped her again, forced her to orally copulate him, sodomized her, and then forced her to orally copulate him again. When Jane Doe 2 gagged, Briggs told her not to "gag on my shit." In short, Briggs callously and heinously violated, terrorized and traumatized two young, vulnerable victims. Under these facts, and Briggs' prior criminal record, we conclude Briggs' punishment neither shocks the conscience, nor qualifies as an extreme sentence that is grossly disproportionate to the crime. (Cf. *Ewing v. California, supra,* 538 U.S. at pp. 30-31 [defendant convicted of stealing three golf clubs sentenced to 25-years-to-life under three strikes law; sentence not cruel and unusual punishment].) The sentence in this case thus did not constitute cruel and unusual punishment under either the federal or the state constitutions.

17

## 2.    Consecutive Sentencing

Briggs contends this matter should be remanded for resentencing because the trial court erroneously assumed section 667.6, subdivision (d) (§ 667.6(d)) mandates consecutive sentences for his section 269 convictions. According to Briggs, section 269 convictions are not specifically enumerated in § 667.6(d), and so the trial court had discretion to impose concurrent sentences for his section 269 convictions.

Under § 667.6(d), "[a] full, separate, and consecutive term *shall* be served" for each violation of certain enumerated offenses "if the crimes involve separate victims or involve the same victim on separate occasions." (§ 667.6(d) [italics added].) In short, § 667.6(d) aggravates "sex offenses involving multiple victims or multiple offenses[,] [and] was intended by the Legislature to provide increased punishment for cases where defendant's culpability is increased by the 'number and violence of his crimes.' " (*People v. Jimenez* (2000) (*Jimenez*) 80 Cal.App.4th 286, 291.)

Section 269 was enacted after § 667.6(d) and for a different purpose: "It increases the penalties for enumerated sexual offenses where the victim is under 14 years of age and the perpetrator is more than 10 years older than the victim. Thus, the Legislature intended to aggravate punishment for forcible sexual offenses where the defendant's culpability is increased by a substantial age disparity." (*Jimenez, supra,* 80 Cal.App.4th at p. 291.)

Section 269 is not among the enumerated statutory offenses in § 667.6(d). That alone is not dispositive, however, because it ignores the fact that section 269 in turn applies to certain enumerated predicate offenses committed by "force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim." (§ 269, subd.(a)(3)-(4).) Among section 269's listed predicate offenses are Briggs' convictions for sodomy, in violation of section 286, and oral copulation, in violation of 288a. (See § 269, subd.(a)(3)-(4).) In other words, one committing a forcible sodomy offense or forcible oral copulation with the prescribed age disparity violates section 269. Also, the offenses of sodomy in violation of 286 and oral copulation in violation of 288a are enumerated in § 667.6(d). Accordingly, when the jury found Briggs had violated section

18

269 under the circumstances presented here, it necessarily found he had violated section 286 and 288a, and he had done so by force or fear. Thus, the factual predicate necessary to apply § 667.6(d) was proved beyond a reasonable doubt. (See *Jimenez*, 80 Cal.App.4th at p. 291 [rejecting contention § 667.6(d) did not cover section 269 offenses]; see also *People v. Glass* (2004) 114 Cal.App.4th 1032, 1037 [noting that although "[s]ection 269 is not one of the sex crimes listed in section 667.6[,] . . . each of the crimes listed in section 269 is also listed in 667.6 . . . [and] the Legislature anticipated a defendant convicted of violating section 269 would be subject to the sentencing requirements of section 667.6"].) Moreover, we agree "[i]t would be irrational to suppose the Legislature intended that criminals who commit multiple violent sexual offenses would be exempt from the aggravated punishment prescribed by section 667.6 merely because their victims happened to be children under age 14 who were 10 or more years younger than they." (*Jimenez, supra,* 80 Cal.App.4th at p. 291.) In sum, this contention fails.

### 3. *Blakely*

Briggs contends that this matter must be remanded for resentencing because the trial court imposed consecutive life sentences based on its finding "the crimes in question occurred on separate occasions." (§ 667.6(d).) Briggs asserts this finding is a question for the jury, pursuant to *Blakely, supra.*

The issue was addressed by our Supreme Court in *People v. Black* (2005) 35 Cal.4th 1238 (*Black*).[6] In *Black*, the Supreme Court analyzed the effect of *Blakely* and *Booker*[7] on California's determinate sentencing law, in particular "whether a defendant is constitutionally entitled to a jury trial on the aggravating factors that justify . . . a

---

[6]    We note that a petition for certiorari was filed in the *Black* case on September 28, 2005, and is pending. Additionally, the United States Supreme Court has granted certiorari in *People v. Cunningham* (Apr. 18, 2005, A103501) [nonpub. opn.], cert. granted *sub nom. Cunningham v. California*, Feb. 21, 2006, No. 05-6551, __ U.S. __, on the issue of *Blakely's* applicability to our determinate sentencing law.

[7]    (*United States v. Booker* (2005) 543 U.S. 220.)

19

consecutive sentence." (*Id.* at p. 1244.) The Supreme Court stated: "[W]e conclude that the judicial factfinding that occurs when *a judge exercises discretion* to impose an upper term sentence or consecutive terms under California law does not implicate a defendant's Sixth Amendment right to a jury trial." (*Ibid.*) (emphasis added). The Court reasoned: "*Blakely's* underlying rationale is inapplicable to a trial court's decision whether to require that sentences on two or more offenses be served consecutively or concurrently. . . . The high court's decisions in *Blakely* and *Apprendi* are intended to protect the defendant's historical right to a jury trial on all elements of the crime, which the court concluded would be jeopardized if a legislature could label facts affecting the length of the authorized sentence for an offense as sentencing factors rather than as elements and thereby eliminate the right to a jury trial on such facts. [¶] No such danger is created by a statute that permits judges to decide whether to impose consecutive sentences without jury factfinding. The jury's verdict finding the defendant guilty of two or more crimes authorizes the statutory maximum sentence for each offense. When a judge considers the circumstances of each offense and the defendant's criminal history in determining whether the sentences are to be served concurrently or consecutively, he or she cannot be said to have usurped the jury's historical role. Permitting a judge to make any factual findings related to the choice between concurrent or consecutive sentences does not create an opportunity for legislatures to eliminate the right to a jury trial on elements of the offenses. Nothing in the high court's decisions in *Apprendi*, *Blakely*, or *Booker* suggests that they apply to factual determinations that do not serve as the 'functional equivalent' of an element of a crime." (*Black, supra,* 35 Cal.4th at p. 1262-1263.)

The Court in *Black* addressed the issue of consecutive sentencing under section 669, not under § 667.6(d), the statute we consider. Unlike section 669, the language of section 667.6(d) is mandatory, not discretionary; under section 667.6(d), the judge must impose consecutive sentences if the judge makes the findings required by the statute. (See § 667.6, subd.(d).) A persuasive argument can be made that under *Booker* and *Black* the mandatory nature of section 667.6 (d) changes the situation and brings

*Apprendi* and *Blakely* back into play. Because under that section the effect of finding the offenses occurred on separate occasions is the mandatory imposition of consecutive sentences, the determination does not affect the exercise of the court's sentencing discretion, so that the reasoning in *Black* arguably is inapplicable. (*Black, supra,* 35 Cal.4th at pp. 1261-1264.) Section 667.6 (d) is not "a statute that permits judges to decide whether to impose consecutive sentences without jury factfinding." (*Id.* at p. 1263.) It is a statute which mandates consecutive sentences when certain facts are found.

Nonetheless, we are constrained by *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 to apply *Black* to the mandatory imposition of consecutive sentences. In *Black*, the court cited with approval the earlier case of *People v. Groves* (2003) 107 Cal. App. 4th 1227, 1230-1231 (*Groves*) which had held that *Apprendi* does not apply to the decision to impose consecutive sentences based on facts that are not elements of the substantive offense. *Groves* was decided after *Apprendi* and before *Blakely*, and involved a challenge to mandatory sentences imposed under section 667.6(d). The court in *Groves* stated: "The mandatory imposition of...(the) maximum possible sentence does not constitute an increase in the maximum possible sentence." (*Groves* at p. 1231) The court then concluded that neither proof beyond reasonable doubt nor trial by jury was constitutionally required to impose the mandatory consecutive sentences. While we question whether the Supreme Court was considering the mandatory nature of the provision involved in *Groves* when it decided *Black*, the Court did state that "[n]othing in *Blakely* or *Booker* undermines the conclusions reached in [*Groves* and cases cited from other jurisdictions]." (*Black, supra,* 35 Cal.4th at p. 1262.) We are therefore bound to adhere to those conclusions.

Here, the statutory maximum was 15 years to life for each aggravated sex offense. With respect to the individual victims, the terms could only be served consecutively if the judge found the offenses occurred on separate occasions, a fact not reflected in the jury verdict or admitted by the defendant. The rule of *Apprendi* is: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory

maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi v. New Jersey*, (2000) 530 U.S. 466, 490 [italics added].)  Blakely added that "the statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of that facts reflected in the jury verdict or admitted by the defendant." (*Blakely, supra*, 542 U.S. at 303.)  Under the precedents cited above, neither *Apprendi* nor *Blakely* is implicated here because consecutive sentencing does not increase the penalty for the offense beyond the statutory maximum.  We must follow the guidance of the Supreme Court on this issue and conclude that Briggs' contention lacks merit.

### DISPOSITION

The judgment is affirmed.


_____

Parrilli, Acting P. J.


We concur:


_____

Pollak, J.


_____

Siggins, J.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit B

(See attached argument)

Cunningham vs. California

MC–275

Name *Averill Briggs*

Address *Salinas Valley State Prison*

*P.O. Box 1050*

*Soledad, CA. 93960*

CDC or ID Number *V31296*

*Supreme Court*
*of California*

(Court)

**SUPREME COURT
FILED**

FEB  1 2008

**Frederick K. Ohlrich Clerk**

**Deputy**

Petitioner *Briggs*

vs.

Respondent *Warden, Evans*

PETITION FOR WRIT OF HABEAS CORPUS

No. *143894* **S160517**

*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

---

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

**RECEIVED**

FEB 1 – 2008

**CLERK SUPREME COURT**

---

Approved by the Judicial Council of California for use under rule 8.380 of the California Rules of Court [as amended effective January 1, 2007]. Subsequent amendments to rule 8.380 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Form Approved for Optional Use
Judicial Council of California
MC-275 [Rev. January 1, 2007]

PETITION FOR WRIT OF HABEAS CORPUS

Page 1 of 6

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 8.380
www.courtinfo.ca.gov
American LegalNet, Inc.

MC–275

This petition concerns:

☐ A conviction ☐ Parole

☒ A sentence ☐ Credits

☐ Jail or prison conditions ☐ Prison discipline

☐ Other *(specify):* _____

1. Your name: Averill Briggs

2. Where are you incarcerated? Salinas Valley State Prison

3. Why are you in custody? ☒ Criminal Conviction ☐ Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon"). Petitioner was found guilty and sentence as follows; Count 1: First degree Burglary, Count 2: Forcible lewd Act upon child, Count 3,4,5,6,7,8,9,10 are Aggravated sexual Assult.

   b. Penal or other code sections: Count 1(459) Count 2(288(b)(1) 269(A)(1) 269(a)(4) 269(A)(5) 269(A)(3)

   c. Name and location of sentencing or committing court: Superior Court of the state of California in and for the County of Alameda

   d. Case number: 143894

   e. Date convicted or committed: December 18, 2003

   f. Date sentenced: March 26, 2004

   g. Length of sentence: 265 year to life

   h. When do you expect to be released? Know time soon

   i. Were you represented by counsel in the trial court? ☒ Yes. ☐ No. If yes, state the attorney's name and address:

   Andrew Strackler, ~~~~ ~~~~ @ 1401 Lakeside Pl Suite 400 Oakland, Ca. 94612

4. What was the LAST plea you entered? *(check one)*

   ☒ Not guilty ☐ Guilty ☐ Nolo Contendere ☐ Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   ☒ Jury ☐ Judge without a jury ☐ Submitted on transcript ☐ Awaiting trial

6.  GROUNDS FOR RELIEF                                                                    MC–275

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

Petitioner states that the united state supreme court has Made A favorable decision in Cunningham that effects his sentence / or the way that petitioner was sentence.

a.  Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where).* (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)

See Attached Paper

b.  Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

See Attached Paper

7. Ground 2 or Ground _____ (if applicable):                                    MC–275

_____

_____

_____

_____

a.  Supporting facts:

_____

_____ See Attached paper _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

b.  Supporting cases, rules, or other authority:

_____

_____ See Attached paper _____

_____

_____

_____

Page 1 of ground 1

A. Supporting facts:
Petitioner states that all counts were ran consecutively to each other, the sentencing Judge enhanced Petitioner with the upper term, Petitioner states that during his sentencing the presiding Judge elected to give Petitioner the upper term based on the fact that she believe Petitioner deserve it and stated on record the following: There's no reason, it was just cruel, it was vicious, it was callous, and a person like you does not deserve to be out in public. My lawyer: Can the court consider a concurrant sentence, the Judge: Absolutely not, Absolutely not, I would not consider it because there were times, I mean, he had her roll over, he had her turn over, he was sticking his private parts all over her. I just think that was reprehensible. he will be sentence separately on each one of these, they will all be consecutively. Petitioner states that none of the above was presented to the Jury for consideration and/or recommend by the Jury in this matter nor was it found to be true by a Jury, Petitioner states that the upper term was given to him based on the presiding Judge's own personal feelings.

1    CRUEL, HORRIBLE ACT, AND THOSE GIRLS WILL NEVER EVER BE THE

2    SAME.  THEY'LL NEVER BE ABLE TO LIVE THEIR LIVES FREELY,

3    COMFORTABLY, BECAUSE OF WHAT YOU DID:  CLIMBING UP A

4    SECOND-STORY ROOM WHEN THESE KIDS ARE HAVING A LITTLE SLUMBER

5    PARTY IN THEIR OWN PRIVATE HOME.

6        I CAN'T IMAGINE THE FEAR OF THOSE GIRLS, ESPECIALLY JANE

7    DOE 2.  I MEAN, THE HORRIBLE THINGS THAT YOU DID TO HER, IT

8    WAS JUST TOTALLY, TOTALLY UNNECESSARY AND REPREHENSIBLE.

9        SO WITH THIS HEINOUS CONDUCT AND THE CRIMES INVOLVED, THE

10   GREAT VIOLENCE, THE GREAT BODILY INJURY, THREATS OF KILLING

11   THE FAMILIES AND THREATS OF KILLING THE VICTIMS, IT WAS JUST

12   CRUEL, IT WAS VICIOUS, IT WAS CALLOUS, AND A PERSON LIKE YOU

13   DOES NOT DESERVE TO BE OUT IN PUBLIC.

14       NOW, BASED ON THE SENTENCING SCHEME, AND I MAY, AS I GO

15   THROUGH THESE, I MAY GET SOME MIXED UP, BUT I'M TRYING TO GO

16   DOWN THE LINE.

17       AS TO COUNT 1, THAT WAS THE 459, FIRST DEGREE, BUT

18   PURSUANT TO PENAL CODE SECTION 654, HE'S GOING TO BE SENTENCED

19   FOR THE BURGLARY BUT UNDER THE OTHER STATUTES, SO THAT HE WILL

20   NOT BE SENTENCED ON THAT COUNT.

21       AS TO COUNT 2, 288(B)(1), HE WILL RECEIVE -- HE WAS TO

22   RECEIVE 25 TO LIFE, BUT THAT WILL BE DOUBLED BECAUSE OF

23   OPERATION OF 1170.12(C)(1), AND THAT WILL BE 50 YEARS TO LIFE

24   IN PRISON.

25       AS TO COUNT 2, THE 269(A)(4) --

26          MS. ESHRAGHI:  THE COURT MEANS COUNT 3.

27          THE COURT:  I'M SORRY.  I DID COUNT 2.

28       COUNT 3, 269(A)(4), THE AGGRAVATED SEXUAL ASSAULT, AND

1   THAT WILL BE NORMALLY 15 TO LIFE BUT THAT WILL BE DOUBLED, SO

2   IT WILL BE 30 TO LIFE.

3       AS TO COUNT 4, BECAUSE IT WAS GENERALLY THE SAME COURSE

4   OF CONDUCT AS COUNT 3, THAT WILL MERGE, AND HE WILL NOT BE

5   SENTENCED SEPARATELY ON COUNT 4.

6       AS TO COUNT 5, HE WILL BE SENTENCED UNDER THAT SAME

7   SCHEME, 269(A)(1), HE'LL BE SENTENCED TO 30 YEARS TO LIFE.

8   THAT'S BECAUSE OF THE DOUBLE.

9           MR. STECKLER:  YOUR HONOR, AS TO ALL OF THE COUNTS

10  AGAINST JANE DOE 2, WOULD THE COURT CONSIDER A CONCURRENT

11  SENTENCE UNDER 667.6(C)?

12          THE COURT:  ABSOLUTELY NOT.  ABSOLUTELY NOT.  I

13  WOULD NOT CONSIDER IT BECAUSE THERE WERE TIMES, I MEAN, HE HAD

14  HER ROLL OVER, HE HAD HER TURN OVER, HE WAS STICKING HIS

15  PRIVATE PARTS ALL OVER HER.  I JUST THINK THAT WAS

16  REPREHENSIBLE.  HE WILL BE SENTENCED SEPARATELY ON EACH ONE OF

17  THESE.

18      AND THESE ARE ALL TO BE SERVED, THE ONES THAT I'VE STATED

19  SO FAR, THEY WILL ALL BE CONSECUTIVELY.

20      WHERE WAS I?  ON COUNT 5?

21          MS. ESHRAGHI:  YES, JUDGE.

22          THE COURT:  AS TO COUNT 6 --

23          MS. ESHRAGHI:  I DON'T BELIEVE THE COURT STATED THE

24  SENTENCE ON COUNT 5.

25          THE CLERK:  YES, SHE DID.

26          THE COURT:  YEAH.  30 TO LIFE.

27      AS TO COUNT 6, THE 269(A)(1), THAT WILL BE 30 TO LIFE,

28  CONSECUTIVELY.

Page 2 of ground 1                                    4

B. Supporting Cases:

Petitioner was tried and Convicted of:

Count 1 First degree residential Burglary (459)

Count 2 Forcible lewd Act upon Child (288)(B)(1)

Count 3 Aggravated Sexual Assault of a Child (269)(A)(4)

Count 4 Aggravated Sexual Assault of a child, Sexual
Penetration by a foreign object (269)(A)(5)

Count 5 Aggravated Sexual Assault of a Child-Rape (269)(A)(1)

Count 6 Same As Count 5, Aggravated Sexual Assault of a child-Rape (269)(A

Count 7 Same As Count 3, Aggravated Sexual assault of a child (269)(A)(4)

Count 8 Aggravated Sexual Assault of a Child-Sodomy (269)(A)(3)

Count 9 Same As Count 3, Aggravated Sexual Assault of a child (269)(A)(4)

Count 10 Same As Count 3, Aggravated Sexual Assault of a-Child (269)(A)(4)

under California's determinate Sentence law (DSL)
the offense is punishable by one of three precise
terms of imprisonment; A lower term of 15 to life,
A middle term of 25 to life, An upper term of 265 to life.
The (DSL) obliged a middle sentence term of 25 to life,
unless the Judge found one or more "Circumstance"
in aggravation, Court rules Adope the implement
of (DSL) define Circumstance of aggravation As facts
the Justify the upper term. Those facts, the rules
provide, Must be established by a preponderance
of the evidence.

in re Cunningham, The sentencing Judge based on a
post trial Sentence hearing found a preponderance
of the evidence six aggravating facts, including
the particular vulnerability of the victim,
and one mitigating fact, that Cunningham had
no record of prior criminal Conduct. Concluding
that the ~~aggravating~~ Aggravators out-weight
the sole Mitigator, the Judge Sentence cunningham

Page 3 of ground 1

to the upper term of 16 years.

In Apprendi v. New Jersey, This court held that, under the sixth Amendment, Any fact, (other than A prior conviction) that exposes A defendant in excess of the relevant statutory maximum must be found by A jury, not A Judge, And established beyond A reasonable doubt, not merely the preponderance of the evidence. See 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L.ed. 2d 435 in All material respects, California's DSL resembles the sentencing systems in calidated in Blakely and Booker 543 US 220; ( following the reasoning in ~~the ~~ those cases, the middle term prescribed under California law, not the upper term, is the relevant statutory maximum. in the instant cases petitioner should have received the middle term of 25 to life And not the upper term of 265 to life. based on the court's decision in Cunningham v. California.

Con Clusion
For the fore going reason set forth in this motion/petition, petitioner states that he qualifies for Modification of sentence And prays that this court remands him for further sentencing in this Matter or sends the California Department of Corrections A corrected Abstract of Judgement correcting petitioners sentence.

MC–275

8. Did you appeal from the conviction, sentence, or commitment? ☒ Yes. ☐ No. If yes, give the following information:

   a.   Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

   Superior Court of the state of California in And for the County of Alameda

   b.   Result  Affirmed                    c.   Date of decision: Aug. 23, 2006

   d.   Case number or citation of opinion, if known:  143894

   e.   Issues raised: (1) Pre Judicial Error

   (2) Prosecution Misconduct

   (3) Consecutive Sentencing

   f.   Were you represented by counsel on appeal? ☒ Yes. ☐ No. If yes, state the attorney's name and address, if known:

   John Ward, P.O. BOX 1536, Sebastopol, CA. 95473

9. Did you seek review in the California Supreme Court? ☒ Yes ☐ No.  If yes, give the following information:

   a.   Result  Affirmed                    b.   Date of decision: Dec 31, 2006

   c.   Case number or citation of opinion, if known:  A120444

   d.   Issues raised: (1) Pre Judicial Error

   (2) Prosecution Mis Conduct

   (3) Consecutive Sentencing

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

   The united state Supreme Court Just Made A favorable decision in Cunningham vs. California that effect his sentencing And/or the way he was Sentence

11. Administrative Review:

   a.   If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].)  Explain what administrative review you sought or explain why you did not seek such review:

   N/A

   b.   Did you seek the highest level of administrative review available? ☐ Yes. ☐ No.
        *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction,  **MC–275**
commitment, or issue in any court?  ☐ Yes. If yes, continue with number 13.  ☒ No. If no, skip to number 15.

13. a. (1) Name of court: _____

   (2) Nature of proceeding (for example, "habeas corpus petition"): _____

   (3) Issues raised: (a) _____

      (b) _____

   (4) Result (Attach order or explain why unavailable): _____

   (5) Date of decision: _____

   b. (1) Name of court: _____

   (2) Nature of proceeding: _____

   (3) Issues raised: (a) _____

      (b) _____

   (4) Result (Attach order or explain why unavailable): _____

   (5) Date of decision: _____

   c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

   _____

   _____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

   I was doing some research And found out that cummingham vs. us has made A favorable decision That effects his Sentencing And/or the way that petitioner was sentenc

16. Are you presently represented by counsel?  ☐ Yes.  ☒ No. If yes, state the attorney's name and address, if known:

   _____

17. Do you have any petition, appeal, or other matter pending in any court?  ☐ Yes.  ☒ No. If yes, explain:

   _____

   _____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

   This is the Proper Court to file A Petition

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date 1/31/08                                    ▷ Averell Bruggs
                                                    (SIGNATURE OF PETITIONER)

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**    Dept. No. 9

Date: December 6, 2007    Hon. LARRY GOODMAN, Judge    Fil R. Cruz, Dep.Clk.
Not Reported, Reporter

IN RE: AVERILL BRIGGS
                    Petitioner

vs.

PEOPLE OF THE STATE OF CALIFORNIA

                    Respondent

Counsel appearing: No Appearance
for Petitioner

Counsel appearing:    No Appearance
for Respondent

Nature of Proceedings:  EX PARTE PETITION FOR WRIT OF HABEAS CORPUS

Case # 143894
PFN : AYQ701
CEN: 2269409

This Court having reviewed the Petition for Writ of Habeas Corpus filed on December 6, 2007 by Petitioner, Averill Briggs, NOW HEREBY ORDERS.

Petition for writ of habeas corpus is denied.  The petition fails to state a prima facie case to entitle petitioner to habeas relief.  The cases relied upon by petitioner, *Blakely v. Washington* (2004) 542 U.S. 296, *Cunningham v. California* (2007), are not applicable to petitioner's sentence.  He was sentenced under a statutory scheme that does not involve the use of an aggravated term.  Also, the law is clear, that Cunningham does not apply to the imposition of consecutive sentences, (*People v. Black* (2007) 41 Cal 4th 799).

<u>CLERK'S CERTIFICATE OF MAILING (CCP 1013a)</u>

I certify that the following is true and correct:  I am a Deputy Clerk employed by the Alameda County Superior Court. I am over the age of 18 years. My business address is 1225 Fallon Street, Oakland, California. I served this ORDER REGARDING EX PARTE PETITION FOR WRIT OF HABEAS CORPUS, by placing a copy in an envelope addressed as shown below and then by sealing and placing it for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Oakland, California, following standard court practices.

Averill Briggs
CDC # V31296
Salinas Valley State Priosn
P.O. Box1050
Soledad, CA 93960

Dated: January 9, 2008
Executive Officer/Clerk of the Court
By: _____
Fil R. Cruz, Deputy Clerk

(Rev. 5/3/07)

# COPY

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

FILED
Court of Appeal First Appellate District
JAN 2 4 2008
Diana Herbert, Clerk
By_____Deputy Clerk

In re AVERILL BRIGGS,

on Habeas Corpus.

A120444

(Alameda County
Super. Ct. No. 143894)

THE COURT:*

The petition for a writ of habeas corpus is denied.

JAN 2 4 2008

McGUINESS, P.J.

Dated: _____                    _____P.J.

* McGuiness, P.J., Pollak, J., & Siggins, J.

S160517

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

---

In re AVERILL BRIGGS on Habeas Corpus

---

The petition for writ of habeas corpus is denied.

SUPREME COURT
FILED

JUL - 9 2008

Frederick K. Ohlrich Clerk

---

Deputy

GEORGE

---

Chief Justice



Averill Briggs-V3129L
Facility B3-230L
P.o.Box 1050
Soledad, Ca. 93960

LEGAL MAIL ONLY

STATE PRISON
GENERATED MAIL

Legal Mail

RECEIVED

AUG 11 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Office of the Clerk, U.S. D
Northern District of Ca
450 Golden Gate Ave

UNITED STATES POSTAGE
$ 048
MAILED FROM ZIP CODE 9

C/O B. Wood

Salinas Valley
State Prison    8-6-08

Salinas Valley
State Prison

Salinas Valley
State Prison

Salinas Valley
State Prison