*E-FILED - 6/29/10*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVERILL W. BRIGGS, | No. C 08-3856 RMW (PR) |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; GRANT OF CERTIFICATE OF APPEALABILITY |
| vs. | |
| WARDEN EVANS, | |
| Respondent. | |

Petitioner, a California prisoner proceeding pro se, filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the petition should not be granted. Respondent filed an answer and a supporting memorandum of points and authorities addressing the merits of the petition. Petitioner filed an objection to respondent's answer, and respondent filed a reply to the objection. Having reviewed the papers and the underlying record, the court concludes that petitioner is not entitled to habeas corpus relief and will deny the petition.

## FACTUAL BACKGROUND

On June 9, 2002, petitioner was charged with committing a forcible lewd act upon a child under 14 years of age; eight counts of aggravated sexual assault of a child under 14 years of age, including four counts of oral copulation, two counts of rape, one count of sexual penetration with

a foreign object, and one count of sodomy; and first degree burglary.  (Pet., Exh. A., App. A ("Op.") at 2.)

At the trial, held in Alameda County Superior Court, petitioner's defense was mistaken identity.  (Id. at 3.)  Both victims testified at trial and identified petitioner as the man who had assaulted them, and also identified petitioner as their assailant in an earlier lineup.  (Id.) Evidence of petitioner's fingerprints, recovered at the crime scene, was presented.  (Id.)

On December 18, 2003, the jury found petitioner guilty on all counts and found all allegations to be true.  (Id.)  Petitioner received a sentence of 50 years to life, followed by seven consecutive sentences of 30 years to life, and another five years for a prior conviction.  (Id.)  In all, petitioner's sentence is 265 years to life.  (Id.)

Petitioner appealed the judgment.  The California Court of Appeal affirmed the judgment on June 15, 2006, and the California Supreme Court denied review on August 23, 2006.  Plaintiff filed a state habeas petition on January 31, 2008, which was denied on July 9, 2008.  Petitioner filed the instant federal action on August 12, 2008.

**LEGAL CLAIMS**

Petitioner asserts the following claims for habeas relief:  (1) prejudicial error when the trial court denied petitioner's motion for mistrial based on the prosecution's misuse of peremptory challenges to excuse African-American prospective jurors, in violation of the Sixth and Fourteenth Amendments; (2) prosecutorial misconduct when the prosecutor's comments improperly created an unacceptable risk that the jury convicted him in part because petitioner did not testify; (3) the imposition of consecutive sentences was statutorily improper; (4) the imposition of consecutive sentences violates Blakely v. Washington, 542 U.S. 296 (2004) and United States v. Booker, 543 U.S. 220 (2005); (5) the imposition of petitioner's sentence violates cruel and unusual punishment; and (6) petitioner's sentence violates Cunningham v. California, 549 U.S. 270 (2007).[1]

**DISCUSSION**

---

[1] Respondent dropped his claim that the petition was untimely.  (Decl. of Stan Helfman, April 17, 2009.)

Order Denying Petition for Writ of Habeas Corpus; Grant of Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.08\Briggs856denyhc.wpd     2

**A.    Standard of Review**

Because the instant petition was filed after April 24, 1996, it is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), which imposes significant restrictions on the scope of federal habeas corpus proceedings.  Under AEDPA, a federal court may not grant habeas relief with respect to a state court proceeding unless the state court's ruling was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.  "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" Id. at 409.  In examining whether the state court decision was objectively unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).  The "objectively unreasonable" standard does not equate to "clear error" because "[t]hese two standards . . . are not the same.  The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

A federal habeas court may grant the writ if it concludes that the state court's

1 adjudication of the claim "resulted in a decision that was based on an unreasonable
2 determination of the facts in light of the evidence presented in the State court proceeding." 28
3 U.S.C. § 2254(d)(2).  The court must presume correct any determination of a factual issue made
4 by a state court unless the petitioner rebuts the presumption of correctness by clear and
5 convincing evidence.  28 U.S.C. § 2254(e)(1).

**B.     Petitioner's Claims**

   1. Prejudicial error with regard to peremptory challenges

First, petitioner claims that the trial court committed a prejudicial error in denying his motion for a mistrial based on the prosecution's alleged misuse of peremptory challenges to strike African-American jurors, in violation of his Sixth and Fourteenth Amendment rights. (Pet., Exh. A, at 4-5.)

During jury selection for petitioner's trial, of the 65 prospective jurors on the jury panel, four were African American.  (Op. at 2.)  One was excused for cause, and the prosecutor used her first, fourth, and fifteenth peremptory challenges to strike the other three potential jurors: Lawrence Lane, Georgia McCutchen, and Sam Richardson, respectively.  (Id.)  Petitioner's attorney submitted a Batson-Wheeler motion to challenge the use of the challenges against the three jurors as racially motivated.  (Id. at 2-3.)   The prosecutor gave the following explanations: she struck panelist McCutchen because her responses led the prosecutor to think that she would hold the prosecution to a higher burden of proof than required by law, and the prosecutor felt that her rapport with panelist McCutchen was poor, especially compared to that of the defense attorney's; she struck panelist Lane because he had previously been involved in a sexual harassment case and the prosecutor thought that experience would bias him in favor of petitioner; and she struck panelist Richardson because of his "curt" and "sharp" responses to her questions as well as his disrespectful demeanor.  (Id. at 4-8.)  After the prosecutor offered her explanations for striking each juror, the trial court concluded that the prosecutor's motives were nondiscriminatory and denied the challenge without proceeding to the third step of the Batson analysis, in which the court would have determined whether the prosecutor's reasons were pretextual.  (Id. at 8.)

On March 26, 2004, before sentencing, petitioner's attorney moved for a new trial, based in part on the argument that the prosecutor had improperly used peremptory challenges to strike three prospective African-American jurors. (Id. at 10-11.) Petitioner is African-American. (Id. at 2.) Petitioner's attorney included a comparative jury analysis that compared the answers of the three African-American jurors to the answers of the other jurors, in order to rebut the prosecutor's argument that she had a race-neutral reason for striking the African-American jurors. (Id. at 10.) The trial court denied the motion, stating that its examination was limited to that of the reasons given for striking individual jurors, and that it was satisfied with the explanations offered by the prosecutor for striking each African-American juror. (Id. at 10-11.)

The Supreme Court has held that the Equal Protection Clause forbids the challenging of potential jurors solely on account of their race. Batson v. Kentucky, 476 U.S. 79, 89 (1986). At stake in the juror selection process is "the very integrity of the courts," as jurors are crucial to the judicial system. Miller-El v. Dretke, 545 U.S. 231, 238 (2005) (internal citations omitted). In California, a party who believes his opponent is using his peremptory challenges to strike jurors on grounds of group bias alone may raise the point by way of a timely motion. See People v. Wheeler, 22 Cal. 3d 258, 280 (1978).

Batson permits prompt rulings on objections to peremptory challenges under a three-step process. First, the defendant must make out a prima facie case by producing evidence sufficient to raise an inference that discrimination has occurred. Johnson v. California, 545 U.S. 162, 170 (2005); Batson, 476 U.S. at 93-94. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Id. at 97; Wade v. Terhune, 202 F.3d 1190, 1195 (9th Cir. 2000). Finally, the trial court must conduct "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available" whether the defendant has carried his burden of proving purposeful discrimination. Batson, 476 U.S. at 93; Green v. Lamarque, 532 F.3d 1028, 1030 (9th Cir. 2008).

The state trial court has a "*duty* to proceed to step three to answer the 'critical question' of whether the prosecutor's justifications for peremptory strikes are persuasive," regardless of whether defense counsel even requests that the court proceed to the third step. United States v.

1  Alanis, 335 F.3d 965, 968 (9th Cir. 2003) (quoting Miller-El, 545 U.S. at 338-39); see also
2  Green, 532 F.3d at 1030 (internal citations omitted).  Where the state trial court has failed in its
3  duty to make this determination, the analysis should be undertaken *de novo*, rather than
4  remanding the case to the state courts to do so.  Id. at 1031 (citing Miller-El, 545 U.S. at 241;
5  Kesser, 465 F.3d. at 356-58, 360).

6        Because evaluating the evidence at this step often involves "determinations of credibility
7  and demeanor" of the prosecutor and panelists, which "lie 'peculiarly within the trial judge's
8  province,'" the trial court's ruling on the issue of discriminatory intent must be sustained unless
9  clearly erroneous.  Snyder v. Louisiana, 552 U.S. 472, 476-82 (2008) (internal citation omitted)
10 (trial judge committed clear error in rejecting Batson objection to peremptory strike of black
11 juror because prosecution's explanation for strike also applied to white jurors who were still
12 accepted by the prosecutor); Ali v. Hackman, 584 F.3d 1174, 1195-96 (9th Cir. 2009) (clear
13 error for both California Court of Appeal and federal district court to credit prosecutor's
14 "implausible" explanations).

15       The California Court of Appeal reviewed the trial court's decision to deny petitioner's
16 attorney's motion for a mistrial and concluded that substantial evidence supported the trial
17 court's findings that the prosecutor struck each of the three African-American jurors for non-
18 discriminatory reasons.  (Op. at 4-11, citing People v. Johnson, 30 Cal. 4th 1302, 1319 (2003)).

19       The California Court of Appeal also dismissed petitioner's claim that the trial court
20 improperly declined to consider his comparative juror analysis, on the grounds that petitioner
21 had not preserved that claim by failing to raise the analysis during trial.  (Op. at 11-12.)  The
22 Court of Appeal went on to assess the comparative juror analysis, and found that nothing in the
23 analysis undermined its affirmation of the state trial court ruling.  (Id. at 12-13.)  The Court of
24 Appeal emphasized that given that there were race-neutral reasons for striking the black potential
25 jurors and the subjective nature of determining a prosecutor's credibility, it would defer to the
26 trial court judge's findings.  (Id.)

27       A reviewing court may examine comparative juror analysis on appeal, even when the
28 defendant did not present the analysis to the state trial court.  Miller-El, 545 U.S. at 241-47; see

1  also Boyd v. Newland, 467 F.3d 1139, 1148-49 (9th Cir. 2006) (holding that after Miller-El,
2  comparative jury analysis may be presented for the first time on appeal).  This comparative
3  analysis may include the jury voir dire and the jury questionnaires of all venire members, not just
4  those venire members stricken.  Green v. Lamarque, 532 F.3d 1028, 1030 (9th Cir. 2008)
5  (citations omitted).
6        The state trial court, lacking the benefit of Miller-El during petitioner's trial, did not
7  proceed to the third step of the Batson analysis.  Thus, this court must undertake that third step of
8  analysis *de novo*.  Greenberg, 532 F.3d at 1030.
9                  A. Juror panelist McCutchen
10       The prosecutor stated that she struck panelist McCutchen because her answers indicated
11 that she would require that the prosecution fulfill a higher standard than required by law.
12 (Clerk's Transcript ("CT") at 1353-1357.)  In the comparative juror analysis, petitioner's
13 attorney submitted that several nonblack panelists, including some who eventually served on the
14 jury, gave similar or even less favorable answers.  (Id.)
15       However, the prosecutor added that she thought panelist McCutchen had better rapport
16 with petitioner's attorney than with her.  (Id. at 1357.)  Petitioner's attorney argued that rapport,
17 or lack thereof, should not be allowed as a reason for striking a panelist, because "rapport is a
18 two-way street" between the questioning attorney and the panelist.  (Id.)
19       While rapport may indeed be a two-way street, determinations like these ultimately rest
20 with the trial court judge, who in this instance found the prosecutor credible and agreed with her
21 assessment.  The court must defer to the trial court judge's finding unless there was clear error,
22 which has not been shown.  See Snyder, 552 U.S. at 477 (internal citations omitted) (explaining
23 that absent "'exceptional circumstances,'" reviewing courts must defer to trial court findings
24 regarding "credibility and demeanor.").  Thus, the Court of Appeal's affirmation of the trial
25 court's finding that the prosecutor had a race-neutral reason for striking panelist McCutchen is
26 not an unreasonable determination of facts, nor is it contrary to or an unreasonable application of
27 clearly established federal law.
28

B. <u>Juror panelist Lane</u>

The prosecutor stated that she struck panelist Lane because he failed to report on his questionnaire that he had been accused of sexual molestation or assault, and that she thought that panelist Lane would as a result hold the prosecution to a higher burden of proof than required by the law. (CT at 1357-59.)  The comparative juror analysis explains that panelist Lane did not state that he was actually the one accused in the sexual harassment case– only that he had been "involved in" such a case. (<u>Id.</u> at 1357.)  Moreover, panelist Lane said that he "did not know what his feelings were" toward the presumption of innocence and reasonable doubt standard. (<u>Id.</u>) In addition, petitioner's attorney showed that a number of nonblack panelists gave similar answers to panelist Lane regarding the evidence that a prosecutor had to show in order to convince him or her to convict. (<u>Id.</u> at 1358-59.)

Nonetheless, regardless of panelist Lane's involvement with the aforementioned sexual harassment case, the prosecutor could reasonably have decided that she did not want to have someone who had been involved with sexual misconduct as a juror on the case at hand.  Thus, she had a race-neutral reason for striking panelist Lane, and the trial court's decision and the Court of Appeal's affirmation were not contrary to or an unreasonable application of clearly established federal law.

C. <u>Juror panelist Richardson</u>

Finally, the prosecutor stated that her main concern with panelist Richardson because of his "offhand" demeanor as well as his "curt" and "sharp" answers to her questions, noting that he openly chewed gum while answering her questions. (<u>Id.</u> at 1359.)  She also expressed concern about some of his answers regarding what evidence he would require to convict and whether he would believe the victims' testimony. (<u>Id.</u> at 1359-61.) Petitioner's attorney argued that nonblack panelists gave similar answers to panelist Richardson, and that he actually indicated that he would believe testimony from the victim. (<u>Id.</u> at 1360-61.) Petitioner's attorney also pointed out that panelist Richardson gave some statements indicating that he would favor the prosecution. (<u>Id.</u> at 1361-62.) Panelist Richardson works with a county sheriff in his job, and stated that sometimes the criminal justice system allows "the criminal" to go "free," which is a

1 disservice to "the victim." (Id. at 1362.)

2 As with panelist McCutchen, however, the court must defer to the trial court's findings
3 regarding the prosecutor's credibility and the demeanor of panelist Richardson. Cf. Snyder, 552
4 U.S. at 477. As there is no indication of clear error, the trial court's finding must be upheld.

5     2. Griffin claim

6 Petitioner's second argument is that the prosecutor's comments improperly created an
7 unacceptable risk that the jury convicted him in part because petitioner did not testify, in
8 violation of his Fifth Amendment right against self-incrimination. (Pet., Exh. A, at 5.)
9 Petitioner adds that the trial court also prejudiced the jury by characterizing his silence as a
10 "refusal to testify." (Id.)

11 During the closing statements, the prosecutor stated that there was no evidence that
12 indicated that anyone other than petitioner had committed the assaults, and that he had offered no
13 alibi for his whereabouts when the crime was committed. (Op. at 14-15.) Petitioner's attorney
14 objected that prosecutor's statements were comments on petitioner's refusal to testify, but the
15 trial court overruled the objections. (Id.)

16 The Fifth Amendment prohibits both the prosecutor and the trial court from commenting
17 on a defendant's failure to testify. Griffin v. California, 380 U.S. 609 (1965). However, a
18 prosecutor may comment on the state of the evidence regarding a matter at trial so long as she
19 refrains from commenting on the defendant's failure to testify. Lockett v. Ohio, 438 U.S. 586,
20 595 (1978) (prosecutor's comment that the government's evidence had been "unrefuted" and
21 "uncontradicted" throughout the trial was not a direct comment on defendant's failure to
22 testify); Cook v. Schriro, 538 F.3d 1000, 1020 (9th Cir. 2008) (holding that prosecutor's
23 comment that defendant had never told his cellmate where he was when the offense was
24 committed as challenging credibility of the cellmate's testimony concerning defendant's alibi
25 defense, rather than directly commenting on defendant's failure to testify).

26 Moreover, even comments on defendant's failure to testify require reversal only if the
27 comments "had substantial and injurious effect or influence in determining the jury's verdict."
28 Brecht v. Abramson, 507 U.S. 619, 622 (1993) (quoting Kotteakos v. United States, 328 U.S.

1 | 750, 770 (1946)).

2 |      Here, the California Court of Appeal affirmed the state trial court's finding that the prosecutor's statements on the defendant's failure to put forward evidence of an alibi despite his claims of mistaken identity were comments on the state of the evidence, and not comments on petitioner's failure to testify. (Op. at 14-16.) Moreover, the California Court of Appeal noted that the jurors were instructed to not discuss or draw any inferences from the fact that the petitioner declined to testify. (<u>Id.</u> at 15-16.)

     The court agrees that the prosecutor's statements constituted comments on the state of the evidence, but not directly on the petitioner's failure to testify. Petitioner based his defense on mistaken identity, yet failed to provide evidence to explain where he was during the assaults. <u>Cf. Cook</u>, 538 F.3d at 1020 (upholding prosecutor's comment on state of evidence with regard to defendant's proffered alibi defense). The prosecutor's comment was based on petitioner's failure to produce evidence that would indicate an alibi, and did not require the petitioner to take the stand. <u>See id.</u> at 1020; <u>see also</u> <u>United States v. Mares</u>, 940 F.2d 455, 461 (9th Cir. 1991) (stating that "[t]he prosecutor may comment on the defendant's failure to present exculpatory evidence, provided that the comments do not call attention to the defendant's own failure to testify"); <u>United States v. Castillo</u>, 866 F.2d 1071, 1083 (9th Cir. 1983) (stating that a "comment on the failure of the defense as opposed to the defendant to counter or explain the testimony presented or evidence introduced is not an infringement of the defendant's Fifth Amendment privilege."). For instance, petitioner could have included testimony from witnesses who were with him or presented a receipt for a restaurant that he was at during the assaults. Thus, the Court of Appeal's decision that the prosecutor's comments did not violate the Fifth Amendment was not contrary to or an unreasonable application of federal law.

     The California Court of Appeal also concluded that the petitioner defaulted on his claim about the trial court's comments because the claim was not made in a timely manner. (Op. at 16, citing <u>People v. Brown</u>, 31 Cal. 4th 518, 553 (2003) for the proposition that to be able to raise a misconduct claim on appeal, the defendant must first have raised it during trial and asked the trial court to instruct the jury accordingly).

1    Even if petitioner's claim regarding the trial court's comments were not procedurally
2 barred and the trial court's comments were indeed a <u>Griffin</u> error, the comment did not have
3 substantial and injurious effect or influence in determining the jury's verdict. Cf. <u>Brecht</u>, 507
4 U.S. at 622. The trial judge's comment was made in passing, and there is no indication that it
5 was stressed to or used by the jury as a basis for finding guilt. Cf. <u>Guam v. Ojeda</u>, 758 F.2d 403,
6 407 (9th Cir. 1985) (explaining that "where alleged [] misconduct is a single isolated statement,
7 did not stress an inference of guilt from silence as a basis of conviction, and was followed by
8 curative instructions, it is harmless beyond a reasonable doubt."). In fact, the jury received
9 explicit instructions that forbade them from using petitioner's silence as a basis for finding guilt.
10 Thus, the Court of Appeal's decision is not contrary to or an unreasonable application of clearly
11 established federal law regarding the Fifth Amendment.
12    3. <u>Consecutive sentencing under California law</u>
13    Petitioner's third claim is that the imposition of consecutive sentences was statutorily
14 improper under California law. (Pet., Exh. A, at 6.) The court declines to review the Court of
15 Appeal's decision on this issue, because petitioner only raises it under state law grounds.
16 <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) (holding that "a state court's interpretation of state
17 law, including one announced on direct appeal of the challenged conviction, binds a federal court
18 sitting in habeas corpus."). To the extent that the trial court's imposing consecutive sentences
19 raises a federal law question, the court addresses that issue below.
20    4. <u>Consecutive sentencing under Blakely and Booker</u>
21    Petitioner's fourth claim is that the trial court's decision to impose consecutive rather
22 than concurrent sentences for his convictions violates the Sixth Amendment under <u>Blakely v.</u>
23 <u>Washington</u>, 542 U.S. 296 (2004) and <u>United States v. Booker</u>, 543 U.S. 220 (2005), because the
24 sentencing scheme allowed the state trial court judge to engage in factfinding that should have
25 been left to the jury. (Pet., Exh. A, at 6-7.)
26    As respondent notes, since the California Court of Appeal issued its ruling, the Supreme
27 Court has held that the Sixth Amendment permits states to assign the question of consecutive
28 versus concurrent sentencing to judges rather than juries. <u>Oregon v. Ice</u>, 129 S.Ct. 711, 714-15

(2009) (noting that many states have followed the common-law tradition of allowing judges decide whether to assign consecutive or concurrent sentences to defendants). Thus, the Court of Appeal's decision to uphold the trial court's decision to assign defendant to consecutive rather than concurrent sentences is consistent with federal law.

### 5. Eighth Amendment claim

Fifth, petitioner argues that his sentence of 265 years to life is essentially life without parole, and as such violates his Eighth Amendment right against cruel and unusual punishment. (Pet., Exh. A, at 7-8.)

The Eighth Amendment prohibits the imposition of sentences that are "grossly disproportionate" to the crimes of which a defendant is convicted. Ewing v. California, 538 U.S. 11, 30 (2003); Lockyer v. Andrade, 538 U.S. 63, 73 (2003).

Here, the California Court of Appeal found that petitioner's sentence was not grossly disproportionate to the sexual assaults that he committed against the two girls. (Op. at 17.) Although petitioner's assaults did not involve murder, the Court of Appeal emphasized that petitioner "callously and heinously violated, terrorized and traumatized two young, vulnerable victims." (Id.) The Court of Appeal compared petitioner's sentence with that of the defendant in Ewing, where even a conviction involving stealing golf clubs could result in a 25 years to life sentence. (Id.)

Although petitioner's sentence is certainly a lengthy term, the federal courts have upheld severe punishments for many defendants convicted of lesser crimes than that of petitioner's. Cf. Ewing v. California, 538 U.S. 11 (2003) (upholding sentence of 25 years to life under three strikes law for stealing three golf clubs); Lockyer v. Andrade, 538 U.S. 63 (2003) (upholding sentence of 25 years to life under three strikes law for petty theft convictions); Nunes v. Ramirez-Palmer, 485 F.3d 432, 439 (9th Cir. 2007) (upholding sentence of 25 years to life for the underlying offense of petty theft with a prior conviction after finding petitioner's criminal history was longer, more prolific, and more violent than petitioner in Andrade, who suffered a harsher sentence); Taylor v. Lewis, 460 F.3d 1093, 1101-02 (9th Cir. 2006) (upholding sentence of 25 years to life with possibility of parole for possession of .036 grams of cocaine base where

Order Denying Petition for Writ of Habeas Corpus; Grant of Certificate of Appealability
P:\PRO-SE\SJ.Rmw\HC.08\Briggs856denyhc.wpd         12

petitioner served multiple prior prison terms and his prior offenses involved violence and crimes against a person).  The court acknowledges the holding of Graham v. Florida, 560 U.S. ___ (2010), that juvenile defendants may not be sentenced to life without parole for nonhomicide crimes, but notes that the holding applies only to juveniles, and petitioner is an adult.  Thus, the court finds that the California Court of Appeal's decision was not contrary to or an unreasonable application of clearly established federal law regarding excessiveness of punishment under the Eighth Amendment.

### 6. Cunningham claim

Petitioner's final claim is that his sentence should be modified under Cunningham v. California, 540 U.S. 270, 293 (2007), in which the Supreme Court held that California's determinate sentencing law, which authorized the judge to find facts that would permit imposing a higher sentence on a defendant, violated the Sixth Amendment.  (Pet., Exh. B, at 8-9.)  Petitioner contends that his sentence should be changed from 265 years to life to 25 years to life.  (Id. at 8.)

Respondent correctly responds that Cunningham applies only to determinate sentencing, and that petitioner's sentence is indeterminate.  (Ans. at 41.)   The jury convicted petitioner of every offense that resulted in his sentence: one count of violating California Penal Code section 288(b) during a burglary, and seven counts of violating section 269(a).  (Op. at 2.)  Section 667.61(d)(4) mandates that petitioner receive a sentence of 25 years to life because he was convicted of violating section 288(b) during a burglary.  Section 269(b) mandates a sentence of 15 years to life for each of petitioner's seven convictions under section 269(a).  These sentences were all doubled under California's three strikes law, due to petitioner having a prior felony conviction.  (Op. at 2, citing CAL. PENAL CODE § 667(e)(1) and § 1170.12(c)(1)).  Lastly, petitioner received an additional five years for the same prior felony conviction.  (Op. at 2, citing CAL. PENAL CODE § 667(a)(1)).

Thus, the sentence imposed by the state trial court and affirmed by the California Court of Appeal does not violate clearly established federal law as to the Sixth Amendment.

**CERTIFICATE OF APPEALABILITY**

The federal rules governing habeas cases brought by state prisoners have been amended to require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009). The court grants a COA on petitioner's claim that his Batson motion should have been granted, but for the reasons set out in the discussion above, petitioner has not shown "that jurists of reason would find it debatable whether the petition [on his other grounds] states a valid claim of the denial of a constitutional right [or] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Accordingly, a COA is denied on those grounds.

**CONCLUSION**

For the reasons set forth above, the court concludes that petitioner has not shown a violation of his constitutional rights, and his petition for writ of habeas corpus is DENIED. The clerk shall close the file.

IT IS SO ORDERED.

DATED: 6/29/10

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge